## HATCH AND OTHERS v. DUNN.

That such a contract existed, (Power & Hewitson's,) and that it authorized the contractors to colonize within the coast leagues, are facts which have been too often judicially ascertained, and are too notorious to require at this day to be established by formal proofs. They are facts which have become a part of the history of the country, and are matter of judicial cognizance.

The consent of the Federal Executive to a grant to a colonist of a colony within the littoral leagues, need not appear upon the face of the title.

A colonial grant affords *prima facie* evidence that the grant lay within the limits of the colony.

It is no objection to a grant, purporting to be to a colonist, that the grant was issued after the expiration of the colonial contract, and that there was no evidence that the grantee had been admitted as a colonist previous to the expiration of the contract.

The instructions to Commissioners were repealed by the 29th Article of the law of 1834, only in so far as they were opposed to its provisions.

It is not believed ever to have been considered necessary, to entitle the applicant to lands, as the head of a family, under the colonization laws, that he should have a family consisting of a wife and children. On the contrary, having domestics, or servants, was considered as equally entitling the applicant to the grant. It cannot be supposed that the applicant, in this case, was less entitled to favor, under the laws in force at the time, in consequence of having Mexicans instead of Africans in his service.

Whether a man to whom a league of land was granted as the head of a family, was in fact the head of a family, was adjudicated by the grant, and cannot be inquired into, unless it be made to appear that the grantee was guilty of moral fraud, and that the officers were deceived thereby.

Appeal from Victoria. Action of trespass to try title, by the appellee against the appellants. The plaintiff claimed the league of land in controversy, by virtue of a grant to him as a colonist and head of a family, in Power & Hewitson's colony, on the 8th of October, 1834. The defendant pleaded "not guilty;" that the grant to the plaintiff was made in fraud and violation of law, the said plaintiff not being, at the time of said pretended grant, the head of a family; and that plaintiff was not a settler or colonist under the contract of Power & Hewitson, during the continuance of said contract, wherefore the said pretended grant was void. The plaintiff introduced a translated transcript from the General Land Office, of the contract of Power & Hewitson, certified by the Spanish translator, with the certificate of the Commissioner, that the person purporting to be translator, was translator, duly bonded and sworn, of that office. There was a general objection by the defendants, which was overruled, and they excepted. It appeared from said contracts, that they expired on the 11th June, 1834. Plaintiff then proved the execution of the testestimonio, and the correctness of an accompanying translation, and offered the same in evidence. The defendants objected on the ground that the authority of the Commissioner, Vidauri, was not proved. The objection was overruled, and the defendants excepted. The petition read as follows:

"Mr. Commissioner. The citizen John Dunn, a native of "Ireland, and a Mexican by law, and resident of this town, "before you in the best form proceeds, saying that it is now "ten years since I arrived in this territory, with the disposi-"tion to remain in it, and by and with the consent of the "Empresarios, I have selected a sitio of land on the margin "of the San Antonio River, adjoining the sitio of Edward "Perry on his east boundary. I ask of you that you will

" please grant to me that which I am entitled to, in doing me
" the justice I entreat, knowing that I am entitled to the same.
" Refugio, September 20th, 1834."

Passed to the Empresarios, "that they may inform me of
" the civil and moral conduct of the petitioner, and expressing
" their consent with respect to his admission," &c.

Reply by Empresarios : " We are instructed in that which
" we subscribe to, that the petitioner, a native of Ireland, of
" good habits and of the Catholic religion and of good con-
" duct, for which we admit him in this new colony, consider-
" ing him entitled to the land he prays for," &c.

Title extended October 8th, 1834. The grantee was no
where denominated the head of a family.

The plaintiff then proved that he resided at Refugio and
Goliad, (without being very specific as to dates, when at each,)
from 1829 until the present time ; that he had cattle and sold
merchandize, in 1834, and kept house, employing a good
many Mexicans ; that Vidauri acted as Commissioner for that
colony, and was the only person who did so, and that he did
not act so until 1834 ; that the Ayuntamiento of Refugio was
organized as early as July, 1834. On cross-examination, the
witnesses said Dunn had no wife nor child in the country until
1837. The land was improved when the defendants took pos-
session, but no one was living there at that time.

The defendants proved the location of the land by them, by
virtue of genuine land certificates.

The defendants asked the Court to charge the jury

1st. Parol proof that Jose Jesus Vidauri acted as Commis-
sioner in extending titles to the persons claiming to be colon-
ists of Power & Hewitson, after the 12th of June, 1834, is
not sufficient evidence of his authority to do so.

2nd. If the jury believe from the evidence, that the plaintiff
had no wife nor child, before the year 1837, he was not entitled
to a league of land as a colonist of the colony of Power &
Hewitson ; and his testimonio for a league is null and void.

3rd. If the jury believe from the evidence, that the plain-

tiff had no wife nor child, and had no other persons employ-
ed in his business, to attend to stock, or to cook for him, or to
other business, except Mexican citizens employed for such ser-
vices, he should not be regarded as the head of a family, nor
entitled to the league of land as such colonist.

4th. If the jury believe from the evidence, that the plaintiff
had not been introduced by the Empresarios as a colonist,
nor admitted by them as such until after the 12th of June,
1834, he was not entitled to be admitted afterwards, nor to re-
ceive a title as such; and although by application to the Ayun-
tamiento, independent colonists might be admitted, yet that
privilege would not authorize such an extension of title as
that of plaintiff.

The Court refused to give the above charges.   Verdict and
judgment for the plaintiff.

*Allen & Hale*, for appellants.   There are two principal
questions in this cause.

First. Is the fact that a single man, without relatives or
children living with him, but employing Mexican servants in
out-door work, applies for and receives a grant of a league of
land under the Colonization Laws, such evidence of fraud on
the part of the grantee, as to invalidate the grant?

Second. Was it within the power and authority of the Com-
missioner of a colony to receive as a colonist, at any time, and
especially after the term of the *empresa* had expired, a natu-
ralized Mexican citizen, who had emigrated to the country
before the term of the *empresa* commenced?

I. Under the 15th and 16th Sections of the Colonization Law
of 1825, a single man, who was not part of a family, was enti-
tled to receive one-fourth of a league of land only.   But it is
contended that Dunn was not a single man in the meaning of
the law, but the head of a family: and it becomes necessary
therefore to ascertain what was comprehended under the term
"family" or "*familia*."

There are three modes by which we determine the significa-

tion of words: 1st, dictionaries and grammars, and commentators; 2nd, the common, public and local usage; 3rd, the context and apparent intention of the writer. If we resort to the first, we shall notice that the word "*familia*" in the Spanish, is derived from the same word in the Latin language, and that from "*famulus*" meaning a house-servant or domestic slave. As all the inmates of a household in former times were, under the Roman Law, completely subject to the authority of the master, and whether wife, children or servants, virtually his slaves, the term *familia* was gradually applied to all.— (Smith's Dic. of Greek and Rom. Antiq. Art. FAMILIA; Leverett Lex. *Verb.* "FAMILIA;" Dig. L. 16, 195; Muhlenbruch Doct. Pand. Sec. 204.)

This meaning was transplanted with the word and was retained, with a slight modification, in the Spanish language. Only, as slavery no longer formed so important a part of the social system, the term now embraced only the wife and children, domestic servants and other dependents living in the house and under the control of the master; and to constitute a family in the legal sense, more than two of such dependents were necessary. (Escriche Dic. de Leg. *Verb.* FAMILIA; Pand. VII. 33, 6; see Notes of Greg. Lopez; Pandectas Hisp. Mex. Art. 5298.)

And it is to be observed that the qualification of living in the house, or being a part of the household, was absolutely indispensable. Out-door servants, *vaqueros pastores, etc.*, did not belong to or constitute a family. (Loc. cit., & Dec. Cortes, 24th June, 1821, p. 203.)

It appears, then, that in this sense of the word, Dunn had no family: for after leaving Goliad, his only servants or dependents were men employed to drive his horses and cattle, kept at Portillos, at a distance, evidently, from his own place of residence on the San Antonio river.

But if we look alone to dictionaries or fixed and arbitrary definitions for the meaning of words, we are often misled. Different significations are attached to almost every term, and

Hatch v. Dunn.

the precise idea intended to be expressed can only be understood by referring to usage and to the context of the passage. Of these, the last is the most satisfactory, and we will, therefore, confine ourselves to that mode of interpretation.

The 15th Section of the Colonization Law of 1825 provides that "unmarried men shall receive the same quantity" as a family "on marrying;" and the ordinary rule of law "*expressio unius, exclusio alterius*," applies with peculiar force. Compare also the summing up of the 16th Section—"families and unmarried men (*no casadas*)—implying that these were the only two, and opposite divisions of the population. The policy of the law was to encourage permanent settlements, and the additional bounty to families was designed to increase the resident population of the country through marriages. It is to be noticed also, that a wife and children are naturally fixed and constant parts of a family, and but one grant can be given for all; but if it had been possible, under the law, that a family should be made up of hired and transient servants, day laborers, or workmen free to come and go at pleasure, the grossest frauds might have been perpetrated by shifting this floating part of a family from one settler to another. And where, as in this case, the servants were Mexicans, and entitled themselves each to their own fourth of a league, or, if married, to their own league, the State might be defrauded by repeated grants, without the possibility of detection. In fact, it is easy to see that these persons might thus, by uniting and separating, obtain in all three leagues and three quarters of land. A construction that would have encouraged fraud and led inevitably to such monstrous results, is indefensible. The true rule evidently is, that the term "family" only extends to those who are united together in one household, by ties naturally inseparable. (Dec. Cortes, October 28th, 1811, p. 20–22, Sec. 2 and 6.)

*A. S. Cunningham*, for appellee. To support the ruling of
89

the Court below, in the first assignment of errors, see 1 Vol. L. R. page, 216, Sec. 5 ; 2 Vol. page 44 and 63, Sec. 5 and 6.

In the 2nd assignment of errors—1st. As to proof of commission of Vidauri.

2nd. A wife or children are not necessary elements of a family. As to what constitutes a family, see Tomlin's Law Dic.; Jacob's Law Dic.; Ainsworth's Dic.; Webster's Dic.; Diccionario de Legislacion, Titles FAMILY and FAMILIA. See, also, 2 Howard's U. S. R. 590 ; 2 White's Compilation, 294 ; 2 Tex. R.

Our law gave to families one league of land, and to those who are absolutely single (solos) and who constitute no part of a family, a quarter of a league. (See Laws Coa. & Tex. p. 18, Sec. 14 and 15.)

Appellee had a family of servants. This construction of the word family was adopted by the Commissioners·in all of the colonies, in the case of slaves, which, by the laws of the State, were emancipated.

3rd. A formal written admission as a colonist, before the expiration of contract, was unnecessary and unpracticed. The admission as a colonist was always made after the appointment of the Commissioner, and after the petition for land was filed; and in this case a Commissioner was not appointed or to be appointed, until one hundred families were introduced.

WHEELER, J. It is objected to the judgment. 1st. That the Court erred in admitting ·in evidence the translated copy from the land office, of the colonization contract of Power & Hewitson, with the accompanying documents.

2nd. That the Commissioner of the colony had no authority to admit the grantee as a colonist, and to issue to him the title, after the expiration of the contract; and

3rd. That the grant is void, because the grantee had not, at the time, a family consisting of a wife or children.

It might suffice, as an answer to the objection now urged to the admission of the evidence in question, that the objection

was not taken in the Court below. The objection, however, if it had been taken in proper time, is not tenable. It was so determined in the case of Hubert v. Bartlett's heirs ; (9 Tex. R. 97 ;) and the same point has been ruled in other cases. (Spillars v. Curry, 10 Id. 143 ; Swift v. Herrera, 9 Id. 280.)

But it was not necessary for the plaintiff to have introduced the contract in evidence. That such a contract existed ; and that it authorized the contractors, Power & Hewitson, to colonize within the coast leagues, are facts which have been too often judicially ascertained, and are too notorious, to require at this day to be established by formal proofs. They are facts which have become a part of the history of the country, and are matter of judicial cognizance. (9 Tex. R. 344 ; Id. 556.)

This Court has held that the consent of the Federal Executive to a grant of lands within the coast leagues, need not appear upon the face of the title of a colonist. (3 Tex. R. 510.) The title itself, in this case, afforded *prima facie* evidence that the land granted was within the colony, and consequently within the consent to colonize, extended to the contract under which it issued ; and there was no necessity to give the contract in evidence for the purpose of showing that consent. (9 Peters, R. 134 ; 9 Tex. R. 233.) Its admission by the Court, however, was not improper ; and cannot have operated to the prejudice of the defendant.

In respect to the supposed invalidity of the plaintiff's title, by reason of the want of authority in the Commissioner, to admit him as a colonist and issue to him the title after the expiration of the time appointed for the completion of the contract, it is to be observed that it does not appear by the record that the plaintiff was admitted as a colonist after the expiration of the contract. It appears that in his application for a title, on the 20th of September, 1834, which was after the time limited by the contract for the introduction or admission of colonists had expired, he states that he had selected his land with the consent of the Empresario. But how long, or at what time previously, he had been admitted or received by

the Empresario as a colonist, and had so selected his land, does not appear. He had been an inhabitant within the colony long before the period of the expiration of the contract: and either had been, or was entitled to be admitted as a colonist; and in either case his title cannot be impeached on the ground that there is no evidence of any formal act of admission or recognition of him as a colonist, other than his title subsequently issued. No such act was necessary to confer on him the rights and privileges of a colonist. (Hamilton v. Menifee, present Term.) It could be no objection to the admission of the plaintiff as a colonist, that he represented to the Commissioner in his application for his title, that he had been ten years in the country and was a Mexican by law: for the Empresario was required by the contract, to receive as colonists all Mexican families that might present themselves in the character of settlers.

The 30th Article of the law of the 26th of March, 1834, while it inhibited the making of any contract for colonization in future, provided for the fulfilment of all those which had been previously made in accordance with the law of the 24th of March, 1825. (Decree 272, Laws and Decrees p. 251.) That law did not require that the titles to colonists should be made out and extended in form, before the expiration of the time appointed by the contract for the introduction of colonists. All that could be required under the law was, that the colonists should have been introduced or admitted in the colony within the prescribed period. The instructions to Commissioners were repealed by the 29th Article of the law of 1834, above referred to, only in so far as they were opposed to its provisions: and, of course, they remained in force for all the purposes contemplated by the provision of the 30th Article. Colonists might be admitted up to the very time of the expiration of the contract. And a sufficient time must necessarily have been allowed them, afterwards, to select their lands; and for the making of the surveys and the preparation of their titles. It was a necessary consequence of the right to admit colonists

up to a certain day, that time should be allowed for extending their titles afterwards, and that the Commissioner should be authorized to enter upon and continue the exercise of the functions of his office, until the titles of the colonists were all completed. It can be no objection to the title, that it was not issued until after the time limited by the contract, for the admission of colonists.

The remaining objection to the title cannot be maintained consistently with the decisions heretofore made on similar questions. The present cannot be distinguished in principle from the case of Hardiman v. Herbert, lately decided, (*Ante*, —) and see Styles v. Gray, 10 Tex. R. 503; 9 Id. 167 and 30; Id. 503–4.

It is not believed ever to have been considered necessary, to entitle the applicant to lands, as the head of a family under the Colonization Laws, that he should have had a family consisting of a wife and children. On the contrary, having domestics, or servants, was considered as equally entitling the applicant to the grant. It cannot be supposed that the applicant, in this case, was less entitled to favor under the laws in force at the time, in consequence of having Mexicans, instead of Africans employed in his service. The former class were not certainly regarded with less favor by the then government of the country, than the latter. There is no evidence of any deception or fraud practiced in obtaining the grant; and fraud is not to be presumed. But if it were legitimate, in any case, to infer fraud from the fact that a party had obtained a grant to a greater quantity of land than by law he was entitled to receive, such an inference would be repelled in the present case, by the fact that the grantee had resided in the colony for years, and must have been well known to the Empresario. Whether he had a family within the true intent and meaning of the law, was a question, which it properly and exclusively appertained to the officers appointed and empowered by the law to pass upon the qualifications of the applicant, that is, the Empresario and Commissioner, to decide; and the cor-

rectness of their decision upon the evidence before them, which constitutes no part of the title and which the grantee was not required to preserve, it would be extremly unreasonable as well as unprecedented, after a change of government and the lapse of so many years, for this Court to undertake to revise, upon such evidence of his right as the party may now have it in his power to produce. Such an assumption of authority would be alike unwarrantable, and dangerous, as being subversive of established principles which lie at the foundation of all our rights of person and property, and on which their permanency and security depend : principles, " which time has " consecrated by the certainty of the law, and the security and " repose which an adherence to its rule affords to the rights of " property and person." (*Per* Baldwin, J. 14 Pet. R. 626 ; 9 Tex. R. 583, 584 ; 7 Id. 443.)

We are of opinion that there is no error in the judgment, and that it be affirmed.

Judgment affirmed.