UNITED STATES *v.* CORSI, ZUMSTEG & CO. (No. 632).[1]

LACTARENE FREE OF DUTY.

A gritty, yellowish powder, with the trade name of "plasmon," but invoiced as lactarene, and known to the trade as lactarene, casein, or milk albumen, is not milk, preserved. The importation was free of duty as lactarene under paragraph 594, tariff act of 1909.

United States Court of Customs Appeals, November 22, 1911.

APPEAL from Board of United States General Appraisers, Abstract 24896 (T. D. 31335).

[Affirmed.]

*D. Frank Lloyd,* Assistant Attorney General (*Leland N. Wood* on the brief), for the United States.

*Walden & Webster* (*Howard T. Walden* of counsel) for appellees.

Before MONTGOMERY, SMITH, BARBER, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

The merchandise involved in this appeal was classified as "milk, preserved," and assessed for duty by the collector of customs at the port of New York at 2 cents per pound under the provisions of paragraph 239 of the tariff act of July 24, 1897, which paragraph reads as follows:

239. Milk, preserved or condensed, or sterilized by heating or other processes, including weight of immediate coverings, two cents per pound; sugar of milk, five cents per pound.

The importers protested that the importation was not preserved milk and set up the claim that the article assessed for duty was entitled to free entry as "lactarene" under the provisions of section 2 and paragraph 594 of the act above mentioned, which section and paragraph are as follows:

Sec. 2. That on and after the passage of this act, unless otherwise specially provided for in this act, the following articles when imported shall be exempt from duty:

594. Lactarene.

The Board of General Appraisers sustained the protest and the Government appealed.

The merchandise in controversy is a gritty, yellowish powder, to which the trade-mark name of "plasmon" has been given by the Plasmon Co., for which it is imported. This designation seems to be a purely fanciful one, which, for advertising purposes and to distinguish the goods from those of rival concerns, has been substituted for the ordinary names by which the product in question is commonly known.

The testimony on behalf of the importers is to the effect that although the article is sold as plasmon to the customers of the Plasmon Co., it comes to this country from the manufacturer marked

_____

as "lactarene," and that it is known to the trade either as lactarene, casein, or milk albumen. On the part of the Government Wilton G. Berry, a chemist in the laboratory of the appraiser's office at the port of New York, testified that the merchandise as shown by a chemical analysis was a "soluble casein compound;" that is, a casein made soluble in water by the addition of soda or potash.

This is all the record evidence as to the nature and character of the imported merchandise, and if it stood alone we should have some hesitation in deciding that it established anything more than that the disputed product was casein, an article which is not milk, but one of the constituents of milk. The finding of the board that lactarene is, but another name for casein is well supported, however, by other facts of which we think judicial notice may be taken, and we are of opinion that the decision reached by that tribunal should not be disturbed. See 16 Cyc. L. & P., 851; Graham *v*. Williams (21 La. Ann., 594, 597); Hatch *v*. Dunn (11 Tex., 708, 715); United States *v*. Teschmaker (22 How., 392, 403).

It is a matter of industrial history that some 60 years ago a Scotchman named Pattison discovered a new material for the fixing of colors on woven fabrics and patented the process for making it. This material was produced by treating buttermilk or skimmed milk with acids, and to the article thus evolved Pattison gave the name of "lactarine." *In re* Hutchinson (T. D. 27645); United States *v*. Brownell (159 Fed. Rep., 219).

Originally the term "lactarene" had no higher sanction than has the trade-mark designation "plasmon," but as time passed and Pattison's invention came into use that which was once a mere name seems to have acquired by popular usage a definite place in the English language and a meaning synonymous with that of "casein." Lactarene is variously defined as follows:

(1) A yellowish, granular, pulverulent *casein* or curd of milk, prepared by precipitating skimmed milk with dilute acids, and used as a mordant in calico-printing. (Standard Dictionary.)

(2) The commercial name for a preparation of the casein of milk used by calico printers like albumen. (Century Dictionary.)

(3) A preparation of casein from milk used in printing calico. (Webster's International Dictionary.)

(4) Lactarene. The casein of milk is commercially prepared by being freed from fat, precipitated by an acid, thoroughly purified, dried, and powdered. It is insoluble in water, but is soluble in an alkali, such as ammonia, and in this form is used, like albumen, for fixing pigment colors in calico printing. The cloth, after it has been printed, is steamed, the ammonia is driven off, and the pigment is thereafter able to resist the action of water. (The Americana.)

When to these definitions of lactarene is added the consideration that to produce casein milk is subjected to practically the same treatment as that employed by Pattison to obtain lactarene, it is not unreasonable to conclude that the terms "lactarene" and "casein" are

really designative of the same substance. (See definitions of casein in the Century Dictionary; Standard Dictionary; New International Encyclopedia; Watts' Dictionary of Chemistry, p. 334; Commercial Organic Analysis, Allen, Vol. IV, pp. 88–90.)

That "lactarene" and "casein" are really verbal equivalents, and that "lactarene" is in truth nothing more than the lay designation for the substance known to science as "casein," is confirmed by the fact that those terms are so regarded in technical works and by scientific authors dealing with mordants and with the constituents and derivatives of milk.

Wagner's Chemical Technology, page 792, referring to the uses of casein, says:

Casein is also used in calico printing as a mordant under the name of lactarene.

Sadtler's Industrial Organic Chemistry, dealing with the uses of casein, discusses the subject, at page 264, as follows:

Casein is now used on a large scale, first, as a basis of food preparations; second, as a fixing agent in calico printing instead of albumen; and third, as a substitute for glue in cements. For the first class of compounds, the casein salts of the alkalies and alkaline earths are used, and are obtained by dissolving casein in the calculated amount of caustic alkali, alkali metal, carbonate or phosphate or milk of lime, and evaporating the solution *in vacuo*. The products are dry, white powders. For the second class of compounds, casein is generally dissolved in ammonia, the solution evaporated, and the residue mixed with milk of lime. *Lactarene* is a commercial preparation of this class, used as a fixing agent.

Crookes' Handbook of Dyeing and Calico Printing, pages 78–79, treating of mordants, says:

Under the name of lactarine, casein is employed as a mordant for fixing pigment colors; for instance, ultramarine. Under certain conditions the results are moderately good, but great care and attention are required. Lactarine is insoluble before use and has to be dissolved in an alkaline liquid, such as ammonia or borax. The colors prepared with lactarine are liable to decomposition, and a color that may have worked well in the morning, in the afternoon has been known to have changed either into a solid mass or a curdy conglomerate totally unfit for printing, and not reconvertible into good color again by any means.

At page 185 the same book says:

In printing, magenta is applied to calico with albumen, and thickened with starch or gum. "Lactarine" (casein) may also be used instead of albumen when no additional thickening is needed. In either case the goods after printing are steamed from 30 to 60 minutes.

The Printing of Cotton Fabrics, by Antonio Sansone, page 171, refers in the following terms to the employment of casein in calico printing:

Casein or lactarine is not largely employed in calico printing for the fixture of pigments, in the same way as albumen, as it does not yield such fast colours. It possesses the same elementary composition as albumen, but is far from possessing the same fixing properties. The commercial article, which is in the form of a yellowish white powder, is obtained from skimmed milk by precipitation with weak acids, then filtering, washing until free from acid, and drying.

Casein, Its Preparation and Technical Utilization, by Robert Scherer, Ed. 1906, pages 25–26, speaking of the method of separating casein from milk, says:

> By this means 100 parts of skim milk will yield about 8½ parts of damp and 3½ parts of dry casein. This is put on the market as "technical casein" or "lactarin." It is soluble in alkalies, but insoluble in water unless the latter receives an addition of 10 per cent of some alkali (*e. g.*, soda, borax, or ammonia). Dry casein still contains about 10 per cent of moisture, which constitutes one of the factors determining the quality of the product, though less important than the appearance and smell. The latter must on no account be ammoniacal, but recall that of fresh milk, and the color must be pure white. The purer the color and the more agreeable the smell, the higher the value.

In Spon's Encyclopedia, at page 1304, criticizing the use of the term "lactarine," it is remarked that:

> It is to be regretted that, in an English patent for the use of casein as a mordant, it received the utterly needless and unscientific name of "lactarine," to which the trade still cling.

The Government insists, however, that under the evidence the importation is not casein, but a casein compound designed for use as a food and not as a mordant and that therefore it can not be admitted free as lactarene even if that term be accepted as another name for casein. In this contention there would be much merit if the facts were such as to justify the conclusion that the merchandise under discussion is not casein, but something else. Unfortunately for the Government's argument in that behalf the assumption of facts upon which it is based is warranted neither by the record nor by matters outside of the record of which judicial notice may be taken. Berry, the Government chemist, did testify that the article imported was a soluble casein compound—a compound of casein and soda or potash, but neither from the testimony of the witnesses nor from the official analysis does it appear that there was any combination between the casein and the soda or potash, and so far as the record discloses the alkalies mentioned may have rendered the casein soluble by taking up the fats and oils surrounding it or in some other purely mechanical way. Moreover, it is fairly evident from Berry's testimony, taken as a whole, that it was not his intention to convey the idea that casein had been so combined with soda or potash as to lose its chemical identity as casein and to become some other article. Indeed, he makes it clear that the addition of soda or potash to the casein is for the purpose of making the latter soluble and that by "soluble casein compound" he means no more than "a sort of casein soluble in water."

The suggestion that the importation is a food product and that lactarene is unfit for human consumption finds no support either in the evidence or in the process for making lactarene as described by Pattison. As a matter of fact Pattison did not discover a new

material, but a new use for a very old material. The curdling of milk with acids is almost as ancient as cheese making, and Pattison simply found out that the curd of milk, a very common foodstuff, might be made to serve a useful industrial purpose as a mordant. To produce lactarene Pattison's patent did not require the use of a poisonous acid, and if it did there is nothing in the case to sustain the deduction that the curd of milk produced by a poisonous acid would be any less casein than the curd of milk produced by an acid as harmless as vinegar.

We think the finding of the board that the merchandise in question is casein is sustained by the evidence and that popular usage has given to the term "lactarene" a signification which makes it synonymous with "casein."

The decision of the Board of General Appraisers is therefore *affirmed.*

DE VRIES, Judge. did not sit in this case.