## J. M. MURRY v. THE STATE.

### No. 2973. Decided March 9, 1904.

**1.—Local Option—Evidence—Subterfuge.**

The conversation between the clerk of the defendant, a drummer who sold medicated bitters, and the defendant, wherein defendant stated that he had agreed with other druggists not to sell any more juniper tonic; whereupon it was suggested by the clerk that the label might be changed to that of dandelion alterative, and a consignment of the latter shortly afterwards reached defendant's drugstore from the house the drummer represented, and the stuff tasted just like juniper tonic, was admissible in a charge against defendant of violating the local option law, to show knowledge and a subterfuge.

**2.—Argument of Council—Same.**

The argument of the county attorney with reference to the change of the label of the decoction sold in local option territory and the quantity drank, from the appearance of the number of empty bottles in defendant's back yard, to show that the stuff was drunk as a beverage, was legitimate.

**3.—Evidence—Quantity Consumed.**

It was proper for the State to introduce testimony, as to the number of empty bottles labeled "dandelion alterative," in defendant's back yard to show the quantities of the alleged medicine drank at defendant's drugstore.

**4.—Same—Alcohol—Expert Testimony.**

The clerk of the defendant who was an experienced drug clerk, and who had himself drank the decoction sold by defendant, and who had experienced the effects of it, was competent to state what per cent of alcohol the same contained.

**5.—Charge of the Court—Requested Charges.**

Where requestel charges in a case of violating the local option law instructed the jury that if they found that "dandelion alterative" was not an intoxicating liquor, if drank in reasonable quantities, it was not error to refuse same, as "reasonable quantities" is too indefin'te, and is not equivalent to saying: "When drank in such quantities as may practically be drank."

**6.—Same—Requested Charges Must Be Correct.**

Requested charges in misdemeanor cases must be correct, before the court is required to give them.

**7.—Same—Definition of Intoxicating Liquors.**

Where the court in a trial for violating the local option law failed to define the term intoxicating liquors; the failure is cured when the court gives a special requested charge which substantially gives this definition, the rule being that in misdemeanor cases on a given subject a charge must be asked.

Appeal from the County Court of Grayson. Tried below before Hon. G. P. Webb.

Appeal from a conviction of violating the local option law; penalty, a fine of $25 and twenty days confinement in the county jail.

The principal facts are stated in the opinion.

No brief of appellant has reached the hands of the Reporter.

*Howard Martin,* Assistant Attorney-General, for the State.—Appellant insists that the court was in error in not defining intoxicating liquor, and that his requested charges on this subject should have been given. This court held in Pike v. State, 40 Texas Crim. Rep., 613, it

was not necessary to define intoxicating liquor, and the Pike case, supra, is submitted as an authority upon which this case should be affirmed.

HENDERSON. JUDGE.—Appellant was convicted of violating the local option law, and his punishment assessed at a fine of $25 and twenty days confinement in the county jail; hence this appeal.

From the statement of facts it appears that appellant was a druggist, and the alleged intoxicating liquor sold by him to one J. W. Brooks was labeled "kidney tonic," or "dandelion alterative." Witnesses state according to their recollection it was called "dandelion alterative." Witness testified that it made him drunk. Appellant's contention was, that it was a patent medicine or drug, and not a beverage, and was not an intoxicant. On the trial defendant placed R. M. Walthall on the stand, who testified that he was on the 25th of December, 1902, and for a long time prior theretofore, the prescription clerk at appellant's drugstore, and that witness Brooks was not in the store or down in town on that day. This witness was then asked on cross-examination by the State if he remembered a conversation (the conversation occurring in defendant's store) between a drummer for a wholesale house and the defendant and himself; and witness was requested to state the conversation. Over appellant's objection the witness said that he remembered such conversation, which was in the front room of the drugstore. The drummer called to sell some "juniper tonic," a kidney remedy, that the store had been handling. Appellant replied that he could not buy any more of that medicine, because he and the other druggists in Collinsville had signed an agreement among themselves not to sell that medicine, and certain medicated bitters. The drummer said why not change the name of juniper tonic to something else. Witness says why not call it dandelion alterative. Witness stated he did not hear the balance of the conversation, as he left at that time. but afterwards a shipment of medicine came from this wholesale house represented by the drummer, and it was a medicine called dandelion alterative, which had the same appearance and taste as juniper tonic. Appellant objected to this on the ground that the question was too general, and that the answer did not tend to show that defendant made the sale charged in the indictment, nor tend to show that the medicine was intoxicating in any degree; and because said statement was injurious to defendant, etc. We believe this testimony was relevant and pertinent to an issue in the case. It tended to show knowledge on the part of appellant of the intoxicating properties of the dandelion alterative. It tended to show a subterfuge in the change of labels on the bottles. According to the testimony of the witness this dandelion alterative was the same character of liquid as the juniper tonic: and it was a character of medicine or beverage which was sold by appellant to the witness Brooks, according to his testimony. This same character of testimony was objected to when appellant himself was

being cross-examined; and the observations made with reference to the testimony of Walthall apply also to the testimony of appellant.

We do not believe the argument used by the county attorney on behalf of the State was unauthorized. His allusion to the large number of bottles found in appellant's back yard with the dandelion alterative label on them was a fact which he could urge before the jury as showing that the medicine was used as a beverage., It was also competent for him to urge before the jury that the testimony with reference to the changing of the labels on the bottles suggested that appellant was put on notice as to the contents of the bottles, and that the same were intoxicating. What we have said with reference to the argument disposes of the objections made to the testimony, showing there were a large number of empty bottles back of appellant's store, labeled "dandelion alterative." This was competent testimony as tending to show that large quantities of the alleged medicines were drunk at the store, and as a circumstance to show that the same was used as a beverage rather than as a medicine.

When the witness Walthall was on the stand he testified that he had never made an analysis of the medicine called dandelion alterative; that he was a druggist, and had been in the business for fifteen years; that he had had experience in handling, tasting and drinking medical preparations. He was then asked if he could state whether or not dandelion alterative contained alcohol? To which he replied that dandelion alterative contained alcohol, and in his opinion about 40 or 50 per cent of alcohol. This was objected to by appellant on the ground that the same was irrelevant, immaterial, and was opinion evidence of one who was not qualified as an expert. The court explains the introduction of this testimony by stating that Walthall was a registered pharmacist, and had had fifteen years' experience as a practical druggist and prescription clerk, and that he was prescription clerk of defendant at the time of the alleged offense, and had been employed by defendant some time prior thereto; and it was also shown that said Walthall had drunk dandelion alterative, and that he had stated that a half-pint bottle of said dandelion alterative had about the same effect on him as a drink of whisky. It occurs to us that the witness was authorized to testify upon this point, even if it be conceded that he was not an expert. He spoke about the matter from his knowledge of the alleged medicine, having drunk of the decoction called dandelion alterative.

Appellant asked the court to give certain requested instructions to the jury, which were refused, and he reserved his exceptions. Among other requested charges he asked the court to give the following: 1. "You are further charged, as a part of the law in this case, that, if you believe the article sold was a medical preparation, and was not intoxicating liquor if drank in reasonable quantities, you will acquit the defendant." And again: 2. "If you believe that defendant J. M. Murry, at

the time and place alleged in the indictment, sold to the witness J. W. Brooks a bottle known as 'dandelion alterative,' and you should further believe from the testimony that the said 'dandelion alterative' was not intoxicating liquor if drunk in reasonable quantities, you will in that event acquit defendant."

An examination of the court's charge disclosed that he gave no instructions covering the point presented in special requested instructions numbers 1 and 2. If these charges had been correct, then the court should have given them, inasmuch as there was testimony on the part of appellant raising the issue as to the intoxicating properties of the liquid sold. However, said charges are not a correct exposition of the law, inasmuch as they are qualified by the expression, "if drank in reasonable quantities." What is a reasonable quantity is left undefined, which left the charge in an unintelligible condition. Intoxicating liquor is defined to be any liquor intended for use as a beverage, or capable of being so used, which contains alcohol, either obtained by fermentation or by the additional process of distillation in such a proportion that it will produce intoxication when taken in such quantities as may be practically drank as an intoxicant." Decker v. State, 39 Texas Crim. Rep., 20; see Black on Int. Liq., sec. 2. The use of the expression here, "drank in reasonable quantities," is not equivalent to saying, "when drank in such quantities as may practically be drank." Said charges requested being incorrect, this being a misdemeanor case, the court was not called on to give them, and appellant could only claim error if the charges asked were correct charges.

Appellant also complains that the court failed in his general charge to give the definition of intoxicating liquors. This is true, but the court did give a special instruction prepared by appellant on this subject which is as follows: "The mere fact that the preparation has alcohol in it will not make it intoxicating liquor in contemplation of the statute, but in order for alcohol to render it such intoxicating liquor, it must contain alcohol to such an extent as to render it capable of producing intoxication when drank as a beverage." The court having given this definition, as requested by appellant, he can not be heard to complain. The rule is that in misdemeanor cases a charge on the given subject must be asked. In this particular case a charge was asked and given.

We have examined the record carefully, and in our opinion the evidence fully sustains the conviction, and the judgment is affirmed.

*Affirmed*