## MORENO v. STATE.

(Court of Criminal Appeals of Texas. Oct. 18, 1911. On Motion for Rehearing, Jan. 24, 1912.)

1. INTOXICATING LIQUORS (§ 198*)—INDICT-MENT AND INFORMATION (§ 122*)—CRIMINAL PROSECUTIONS — AFFIDAVIT — VARIANCE — "THEN AND THERE."

In an affidavit for violating the local option law, it was alleged that at an election held it was determined that the sale of intoxicating liquors should be prohibited in justice precinct No. 4, in a county and state named, and the necessary orders made and publication had, and that thereafter, on a date specified, a person named "did then and there sell intoxicating liquor" to a person named. The information followed the complaint, except that, instead of the words "then and there," the words "thereafter in said justice precinct" were used. Held, that the affidavit sufficiently charges that the sale took place in justice precinct No. 4, and that there was no variance between the affidavit and the information in that respect; both affidavit and information charging the offense to have been committed in prohibited territory (citing Words & Phrases, vol. 8, p. 6946).

[Ed. Note.—For other cases, see Intoxicating Liquors, Dec. Dig. § 198;* Indictment and Information, Cent. Dig. §§ 321–325; Dec. Dig. § 122.*]

2. CRIMINAL LAW (§ 1052*)—APPEAL—REC-ORD—EXCEPTIONS.

On appeal from a conviction for violation of the local option law, the action of the trial court in overruling a motion for a continuance will not be considered, where there is no such motion in the record and no exception reserved to the action of the court in overruling the motion if one was presented.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2659; Dec. Dig. § 1052.*]

3. CRIMINAL LAW (§ 1090*)—APPEAL—NECES-SITY FOR BILL OF EXCEPTIONS.

On appeal from a conviction in a prosecution for violating the local option law, the question whether the court erred in permitting the minutes of the commissioners' court to be introduced in evidence will not be considered where no bill of exceptions appears in the record.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2816; Dec. Dig. § 1090.*]

4. CRIMINAL LAW (§ 400*)—PAROL EVIDENCE AS TO PRECINCT BOUNDARIES.

In a prosecution for the sale of intoxicating liquor in a certain justice precinct, the rec-ord of the precinct introduced by the state did not disclose what surveys were within the bounds of the precinct. Held, that oral evidence that the place where the liquor was sold was within the limits of the precinct was admissible, although the boundaries of a justice precinct are matters of record, and the record is the best evidence thereof.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 879–886; Dec. Dig. § 400.*]

5. INTOXICATING LIQUORS (§ 239*)—CRIMI-NAL PROSECUTION—INSTRUCTION.

Acts 1st Ex. Sess. 30th Leg. c. 8, regulate contests of local option elections, and, in a prosecution for selling intoxicating liquor in a local option territory after the time for contesting the election in such territory prescribed by this law has elapsed, the validity of the election upon the introduction of the orders of the commissioners' court is presumed, and it was not error for the court to instruct that prohibition was in force in the territory described in the orders.

[Ed. Note.—For other cases, see Intoxicating Liquors, Dec. Dig. § 239.*]

6. CRIMINAL LAW (§ 1056*)—CRIMINAL PROS-ECUTION—INSTRUCTIONS.

In a prosecution for selling liquor in a local option territory, where accused claimed that the liquor was given to the state's witnesses, he cannot complain of the failure of the court to define the word "sale," if he does not request such an instruction, as, in misdemeanor cases, if the court fails to present any theory of the case desired by accused, it is his duty to request an instruction and except to the failure of the court to give the same, and, if he does not do so, the error of the court in that respect is not ground for reversal.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2668–2670; Dec. Dig. § 1056.*]

7. INTOXICATING LIQUORS (§ 167*)—ACCOM-PLICES—PURCHASE OF LIQUOR.

Under Pen. Code 1895, art. 407, providing that, where the sale of intoxicating liquors has been prohibited, the fact that a person purchases liquor in violation of the law shall not render such person an accomplice, one who is requested by an officer to purchase liquor of accused, and who makes such purchase with his own money knowing that accused would be prosecuted if he sold him the liquor, is not an accomplice of accused.

[Ed. Note.—For other cases, see Intoxicating Liquors, Dec. Dig. § 167.*]

8. CRIMINAL LAW (§ 814*)—INSTRUCTIONS—CONFORMITY TO EVIDENCE.

Where, in a prosecution for the sale of intoxicating liquor in local option territory, there was no evidence raising the issue that accused was acting as agent of the prosecuting witness in making the sale, there was no error in refusing a special charge relating thereto.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1979; Dec. Dig. § 814.*]

9. CRIMINAL LAW (§ 304*)—EVIDENCE—JUDI-CIAL NOTICE—BEER AS "INTOXICATING LIQ-UOR."

Where, in a prosecution for the sale of intoxicating liquor in local option territory, there is no evidence raising the issue that the article sold, which was beer, was not intoxicating, but the case was tried on the theory that it was intoxicating and prohibited, there was no error in refusing an instruction based on the theory that the beer sold was not an intoxicating liquor, as under Acts 1st Called Sess. 31st Leg. c. 17, defining "intoxicating liquors" as including

fermented liquor, the courts will take judicial knowledge that beer is an intoxicating liquor.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 716; Dec. Dig. § 304.*

For other definitions, see Words and Phrases, vol. 4, pp. 3736–3746; vol. 8, p. 7692.]

On Motion for Rehearing.

10. CRIMINAL LAW (§ 304*)—JUDICIAL NOTICE.

Judicial knowledge can be acquired by facts learned through former litigation, and courts properly take judicial notice of facts forming part of the common knowledge of every person of ordinary understanding and intelligence, and of such things as are generally known in their respective jurisdictions, and courts will extend the scope of judicial knowledge to keep pace with the advance of art, science, and general knowledge, when the facts are of such an age and duration as to have become a part of the common knowledge of well-informed persons.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 700–717; Dec. Dig. § 304.*]

11. CRIMINAL LAW (§ 304*)—JUDICIAL NOTICE—PRESUMPTION AGAINST ACCUSED.

In a prosecution for violation of the local option law, taking judicial notice that beer is an intoxicating liquor is not indulging a presumption against accused, who was proved to have sold beer, without any evidence being introduced that beer is an intoxicating liquor.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 700–717; Dec. Dig. § 304.*]

Davidson, P. J., dissenting.

Appeal from Caldwell County Court; Geo. W. Kyser, Judge.

Juan Moreno was convicted of violating the local option law, and appeals. Affirmed.

E. B. Coopwood, for appellant. C. E. Lane, Asst. Atty. Gen., for the State.

HARPER, J. In this case appellant was prosecuted for violating the local option law, which had theretofore been adopted in justice precinct No. 4 in Caldwell county. He was convicted, and his punishment assessed at a fine of $50 and 20 days' imprisonment in the county jail. He entered into a recognizance, and brings the case to this court for review.

Appellant filed a motion in arrest of judgment on the following grounds: (1) Because the affidavit upon which the information in this case is based is insufficient, in that it does not allege that the beer, alleged to have been sold, was sold in justice precinct No. 4 of Caldwell county, Tex., the alleged prohibited territory. (2) Because there is a variance in and between the affidavit and the information, in that the affidavit does not allege where the alleged sale was made; whereas, the information alleges that it was made in justice precinct No. 4, Caldwell county, Tex.

[1] In the affidavit or complaint it is alleged that at an election held it was determined that the sale of intoxicating liquors should be prohibited in justice precinct No. 4, in Caldwell county, Tex., and the neces-sary orders made and publication had, "and thereafter, to wit, on the 16th day of September, 1910, one Juan Moreno *did then and there* sell intoxicating liquor" to Dock Duncan. The information follows the complaint, except, instead of using the words "then and there," says "thereafter in said justice precinct."

We think the words "then and there," in connection with the other allegations in the complaint, have the same meaning as the words used in the information, and there was no variance, and the complaint and information both charge the offense to have been committed in the prohibited territory. See Words & Phrases, vol. 8, p. 6946; Jeffries v. Commonwealth, 12 Allen (Mass.) 152; Palmer v. People, 138 Ill. 356, 28 N. E. 130, 32 Am. St. Rep. 146; Kennedy v. Commonwealth, 6 Ky. 490, and other cases cited. The case of Smith v. State, 49 S. W. 373, and other cases cited, do not support appellant's contention. In those cases there was no allegation as to the place; whereas, in this complaint there is a specific allegation as to the time and place as construed by the authorities.

[2] We cannot consider that ground of the motion for a new trial complaining of the action of the court in overruling the motion for a continuance, as there is no such motion in the record, and no exception reserved to the action of the court in overruling the motion, if one was presented.

[3] Neither can we consider the second ground of the motion, complaining that the court erred in permitting the minutes of the commissioners' court to be introduced in evidence. If such objection was made, no bill of exception appears in the record, and under our decisions, in the absence of a bill of exceptions, the matter will not be reviewed.

[4] The beer was alleged to have been sold at a Mexican celebration held on the C. T. Shaw place. W. E. McDowell and Oscar Hoffman were permitted to testify that the C. T. Shaw place was a part of Thos. Maxwell league, and was within the territorial limits of justice precinct No. 4, at the time the prohibition election was held. The objections urged by appellant would only go to the weight of their testimony, and not to its admissibility. It is true the metes and bounds of a justice precinct are matters of record, and are the best evidence of the bounds of the precinct. This record was introduced by the state. But the record would not disclose what surveys are within the bounds of the precinct, and this can be shown by oral testimony.

[5] The acts of the 30th Legislature, p. 447, regulate contests of local option elections, and, after the time prescribed by this law has elapsed, the validity of the election, upon the introduction of the orders of the

commissioners' court, is presumed, and there was no error in the court instructing the jury that prohibition was in force in the territory described in the orders. Jerue v. State, 57 Tex. Cr. R. 213, 123 S. W. 414; Evans v. State, 55 Tex. Cr. R. 450, 117 S. W. 167; Ex parte Thulemeyer, 56 Tex. Cr. R. 337, 119 S. W. 1146.

[6] The testimony of the state witnesses proved positively two separate and distinct purchases of beer from appellant, if believed. The appellant denied selling the beer, and claimed to have given it to the state witnesses. If the appellant desired that the word "sale" be defined, he should have requested instructions in regard thereto, and, not having done so, he cannot now complain; this being a misdemeanor. In a misdemeanor case, if the court fails to present any theory of a case desired by appellant, it is his duty to request such instructions and except to the failure of the court to give same, and, if he does not do so, it will not present such error as to cause a reversal of the case. Ellis v. State, 59 Tex. Cr. R. 626, 130 S. W. 170; Bradley v. State, 136 S. W. 446, and cases cited in these opinions.

[7] The witness Duncan, who testified he purchased beer from appellant, also testified he did so at the request of the officers, knowing that if he succeeded in purchasing same appellant would be prosecuted and convicted. He said he paid his own money for the beer, paying 25 cents for one bottle, and later purchased two bottles for which he paid 40 cents. A portion of this beer he delivered to the officer requesting him to make the purchase. Appellant insists that this makes the witness Duncan an accomplice, and the court should have given the two special charges covering this theory of the case, requested by appellant. Article 407 of the Penal Code provides: "When the sale of intoxicating liquors has been prohibited in any county, justice precinct, city or town, the fact that a person purchases it in violation of the provision of this chapter shall not constitute such person an accomplice." He was not employed to purchase the beer, but merely did so by request.

[8] There was no evidence raising the issue that appellant was acting as agent of the witness Duncan in making the sale. Consequently there was no error in refusing special charge No. 5 requested. Jones v. State, 60 Tex. Cr. R. 426, 132 S. W. 476.

[9] All the other special charges requested by appellant were given, except the two which presented the theory: "Inasmuch as the evidence failed to show that the beer sold was an intoxicating liquor, appellant should be acquitted." There appears to have been no issue raised as to whether the beer was intoxicating or not in the trial of the case. The state's testimony showed a sale of beer by appellant to Duncan. The appellant's testimony showed a gift of the beer to Duncan. The price testified to by the state witness was 25 cents a bottle, or two for 40 cents. A barrel of beer was shown to have been in a wagon on the celebration grounds about 9 o'clock at night. Appellant claimed he had purchased it for others, naming them. The witness testified he did not know the brand; that it was just ordinary beer. The court instructed the jury that if they believed beyond a reasonable doubt that appellant sold to Duncan intoxicating liquor, to wit, beer, to convict. The appellant requested instructions that, as there was no evidence showing the beer to be an intoxicating drink, to acquit. This presents the question: Does a court judicially know that beer is an intoxicating liquor? This is a question of some difficulty, and our courts in the past have not been in accord on this question. In Aston v. State, 49 S. W. 385, this court held: "The proof shows that the prosecuting witness bought whisky of appellant, and it is a matter of common information that whisky is a spirituous liquor, distilled from corn and vegetables, and is highly intoxicating. It follows that the court did not err in charging the jury as to whether or not the defendant sold intoxicating liquor, because the courts take judicial knowledge of the fact that whisky is an intoxicating liquor." See, also, Douthitt v. State, 61 S. W. 404; Sebastian v. State, 49 Tex. Cr. R. 510, 72 S. W. 849; Wilcoxson v. State, 91 S. W. 581.

In Maier v. State, 2 Tex. Civ. App. 300, 21 S. W. 974, it is held: "It seems well settled that the word 'beer,' in its ordinary sense, denotes a beverage which is intoxicating."

In Woollen & Thornton's Law of Intoxicating Liquors it is said: "Whether or not courts will take judicial notice that beer is an intoxicating or malt liquor has been one of much contrariety of opinion, and this arises from the fact that there are many kinds of beer well known to be neither malt nor fermented nor intoxicating liquors. Therefore, upon a proof of a sale of 'beer,' and nothing more, many cases hold that it is not shown that there was a sale of either malt or intoxicating liquor. But by the better line of cases, on proof of a sale of 'beer,' even without additional words, the courts will construe it as a sale of fermented, malted, or intoxicating liquors, and the burden is upon the persons claiming it is not a malted, fermented, or intoxicating liquor to show that fact. These decisions are based on the primary meaning of the word 'beer.' 'Webster,' said the Supreme Court of Indiana, 'defines beer to be "a fermented liquor made from any malted grain, with hops and other bitter flavoring matter." In other words, it is a malt liquor, which the same author declares to be "a liquor prepared for drink by an infusion of malt, as beer, ale, porter, etc." It may therefore be said that beer is a liquor infused with malt and prepared by fermentation for use

as a beverage. As a consequence, when "beer" is called for at a place at which intoxicating drinks are sold, the bartender, having in view the primary meaning as well as the common use of the word, is justified in inferring, and must reasonably infer, that malted and fermented beer is wanted. If any other kind of beer is desired, it is expected that qualifying words will be used, such as spruce beer, root beer, small beer, ginger beer, and the like, thus attaching a remote and secondary meaning to the word "beer" as descriptive of particular beverages. When, therefore, a witness testifies to the sale or giving away of beer under circumstances which make the sale or giving away of any intoxicating liquor unlawful, the prima facie inference is that the beer was of that malted and fermented quality declared by the statute to be an intoxicating liquor, and the court trying the case ought to take judicial notice of the inference which there arises from the use of the word "beer" in its primary and general sense.' So, where the term 'lager beer' is used in testimony, the inference is that an intoxicating beer was meant. In days gone by, when the term 'strong beer' was in use to distinguish it from small beer, courts took judicial notice that it was intoxicating." See, also, the following authorities: State v. Church, 6 S. D. 89, 60 N. W. 143; Maier v. State, 2 Tex. Civ. App. 296, 21 S. W. 974; Briffitt v. State, 58 Wis. 39, 16 N. W. 39, 46 Am. Rep. 621; United States v. Du Cournau (C. C.) 54 Fed. 138; Adler v. State, 55 Ala. 16; Watson v. State 55 Ala. 150; State v. Goyette, 11 R. I. 592; People v. O'Reily, 129 App. Div. 522, 114 N. Y. Supp. 258, affirmed 194 N. Y. 592, 88 N. E. 1128; Pedigo v. Commonwealth, 70 S. W. 659, 24 Ky. Law Rep. 1029, affirming 68 S. W. 1113; Sothman v. State, 66 Neb. 302, 92 N. W. 303; Cox v. State, 3 Okl. Cr. 129, 104 Pac. 1074; Peterson v. State, 63 Neb. 251, 88 N. W. 549; Markinson v. State, 2 Okl. Cr. 323, 101 Pac. 353; Kerkow v. Bauer, 15 Neb. 155, 18 N. W. 27; State v. Mitchell, 134 Mo. App. 540, 114 S. W. 1113; Lambie v. State, 151 Ala. 86, 44 South. 51; State v. Carmody, 50 Or. 1, 91 Pac. 446, 1081, 12 L. R. A. (N. S.) 828; Hoagland v. Canfield (C. C.) 160 Fed. 146; Locke v. Commonwealth, 74 S. W. 654, 25 Ky. Law Rep. 76; Commonwealth v. Hurst, 62 S. W. 1024, 23 Ky. Law Rep. 365; Killip v. McKay, 13 N. Y. St. Rep. 5; People v. Wheelock, 3 Parker, Cr. R. (N. Y.) 9; Murphy v. Montclair, 39 N. J. Law, 673; State v. Lemp, 16 Mo. 389; State v. Houts, 36 Mo. App. 265; State v. Teissedre, 30 Kan. 476, 2 Pac. 650; Douglas v. State, 21 Ind. App. 302, 52 N. E. 238; State v. Jenkins, 32 Kan. 477, 4 Pac. 809; Myers v. State, 93 Ind. 251 (this case overrules the prior Indiana cases on this point); Stout v. State, 96 Ind. 407; Welsh v. State, 126 Ind. 71, 25 N. E. 883, 9 L. R. A. 664; Dant v. State, 106 Ind. 79, 5 N. E. 870; Welsh v. State,

126 Ind. 71, 25 N. E. 883, 9 L. R. A. 664; Briffitt v. State, 58 Wis. 39, 16 N. W. 39, 46 Am. Rep. 621; State v. Goyette, 11 R. I. 592; State v. Rush, 12 R. I. 198; Waller v. State, 38 Ark. 656.

In the American & English Ency. of Law, p. 200, it is said: "According to some decisions lager beer falls within the term 'intoxicating liquors' if the use of it is ordinarily or commonly attended with entire or partial intoxication, and whether such is a fact is to be decided by the jury upon the evidence in the case. But these decisions are not in accord with the weight of authority, which is to the effect that the court will take judicial notice that lager beer is malt liquor and that it is intoxicating. In a number of decisions it is held that the courts cannot take judicial notice that beer is an intoxicating liquor, and that, in the absence of evidence as to its quality and effect, it does not import intoxicating liquor. These decisions proceed upon the theory that the term 'beer' includes both intoxicating and nonintoxicating liquors, and cannot be said, in its ordinary meaning necessarily to imply an intoxicating drink. On the other hand, the doctrine maintained by the weight of authority is that the word 'beer,' without qualification, in its ordinary acceptation, imports a malt and intoxicating liquor, and that the court will take judicial knowledge of that fact; and, if on a prosecution for selling beer the defendant is shown to have made the sale charged, it is competent for him to show that the beer was not intoxicating; but, if he relies on this as a defense, the burden is on him to show it. In the absence of evidence to the contrary, beer will always be presumed to be an intoxicating liquor." On pages 200 and 201, vol. 17, of the second edition of this work, will be found cited many authorities sustaining the text as thus laid down.

In the Encyclopædia of Evidence, p. 675, vol. 7, it is said: "The authorities are practically unanimous on the proposition that lager beer is judicially known to be an intoxicating malt liquor. Some cases, however, take the opposite view. So where the evidence discloses a sale of beer, without any qualifying or descriptive words, it will be presumed to be intoxicating"—citing United States v. Du Cournau (C. C.) 54 Fed. 138; (Georgia) Snider v. State, 81 Ga. 753, 7 S. W. 631, 12 Am. St. Rep. 350; (Indiana) Welsh v. State, 126 Ind. 71, 25 N. E. 883, 9 L. R. A. 664; (Kansas) State v. May, 52 Kan. 53, 34 Pac. 407; (Kentucky) Locke v. Com. 74 S. W. 654, 25 Ky. Law Rep. 76; (Minnesota) State v. Tisdale, 54 Minn. 105, 55 N. W. 903; (Missouri) State v. Lemp, 16 Mo. 389; (Nebraska) Sothman v. State, 66 Neb. 302, 92 N. W. 303; (New Jersey) Murphy v. Montclair, 39 N. J. Law, 673; (New York) Blatz v. Rohrbach, 116 N. Y. 450, 22 N. E. 1049, 6 L. R. A. 669; (Ohio) Markle v. Town of Akron, 14 Ohio 586; (Wisconsin)

Briffitt v. State, 58 Wis. 39, 16 N. W. 39, 46 Am. Rep. 621; (Alabama) Watson v. State, 55 Ala. 159; (Arkansas) Waller v. State, 38 Ark. 656; (Florida) Netso v. State, 24 Fla. 363, 5 South. 8, 1 L. R. A. 825; (North Carolina) State v. Giersch, 98 N. C. 720, 4 S. E. 193; (Rhode Island) State v. Goyette, 11 R. I. 592; (South Dakota) State v. Church, 6 S. D. 89, 60 N. W. 143; (Vermont) State v. Kibling, 63 Vt. 636, 22 Atl. 613.

In this state, where any county or precinct adopts local option, the dealer who merely has a beer license judicially knows that its sale is prohibited, closes his doors, and asks for a refund of his license. The commissioners' court without proof knows beer is intoxicating and prohibited, and refunds the county license fee. The comptroller judicially knows that it is intoxicating and refunds the state occupation tax. In fact, all officers who are intrusted with any duty in the premises take official cognizance that "beer" is an intoxicant, and act in accordance therewith without any evidence, and the law writers all declare that courts may properly and will take judicial knowledge of facts that may be regarded as forming part of the common knowledge of every person of ordinary understanding and intelligence. Whatever may have been the rule in this state formerly, since the act of the 31st Legislature (1st Called Sess. p. 293) defining intoxicating liquors it cannot longer be a question but what the courts will take judicial knowledge that beer is an intoxicating liquor.

Inasmuch as there was no issue in the evidence in the trial court raising the issue that the article sold, to wit, beer, was not an intoxicating liquor, but the whole case was tried on the theory that it was intoxicating and prohibited, there was no error in the charge of the court, or in the refusal to give the special charges requested.

The errors assigned in the brief, which do not appear in the motion for a new trial, are not considered.

The judgment is affirmed.

DAVIDSON, P. J., absent.

On Motion for Rehearing.

HARPER, J. At a former day of this term this case was affirmed. Appellant has filed a motion for rehearing and an able brief in which he contends that the court erred in three particulars, and out of respect to the earnest and forcible presentation thereof we will discuss each of them again.

1. Appellant insists that we were in error in holding that the affidavit upon which the prosecution is based is sufficient, and, while conceding that the authorities cited in the original opinion so hold, yet he insists that we should not "travel in foreign fields." Appellant insists that the words "then and there" do not sufficiently designate the place of sale, and cites us to the case of Williams v. State, 38 Tex. Cr. R. 377, 43 S. W. 115. In that case it is held that it must be alleged that the sale took place in the prohibited territory. This is correct; but, having alleged the time and place once, the words "then and there" are words of reference and fix the time and place as previously alleged.

In the case of Baker v. State, 25 Tex. App. 1, 8 S. W. 23, 8 Am. St. Rep. 427, this court holds: "We are of opinion that the indictment is substantially sufficient in both its counts, and that the defendant's exceptions thereto and his motion in arrest of judgment were properly overruled. The locus in quo of the house burned is alleged sufficiently; the allegation being 'a certain house then and there occupied, owned and, controlled by him, the said Baker,' and the words 'then and there' referring to the time and county previously stated."

In the case of State v. Slack, 30 Tex. 355, Judge Willie says: "The words 'then and there,' as used in an indictment, are words of reference, and when time and place have once been named with certainty, it is sufficient to refer to them afterwards by these words, and it will have the same effect as if the time and place were actually repeated."

In the case of Smith v. State, 36 Tex. Cr. R. 443, 37 S. W. 743, this court held: "Appellant moved to quash the indictment, on the ground that, after the charge of breaking, in the language introducing the charge as to the intent to commit theft, the phrase 'then and there' was not used. In the indictment the charge of breaking is coupled with the charge as to the intent by the conjunction 'and.' Ordinarily, where the evidence consists of a series of connected acts, it is necessary, instead of repeating the time and place originally alleged, to use the phrase 'then and there.' See Bishop's Crim. Proc. § 412. In this case, the act was the breaking, and we think that the use of the conjunction 'and,' coupling the intent with the breaking, was sufficient. It makes the indictment plain and intelligible, and sufficiently extends the original allegation of time and place to the succeeding averments in the indictment. See Harris v. State, 2 Tex. App. 102."

In the case of Butler v. State, 46 Tex. Cr. R. 289, 81 S. W. 743, this court held: "Appellant questions the indictment on the ground that in the closing part of the indictment, to wit, the allegation, 'and the said L. A. Butler did unlawfully and fraudulently take, misapply, and convert the same to his own use and benefit,' etc., that it fails to show such a connection with what precedes as to embrace a proper allegation of time and venue. We do not believe this contention is sound. The indictment pursues the ordinary form laid down in White's Annotated Penal Code, § 138, omitting, however, in said clause above referred to the al-

legation, 'then and there' after the word 'did.' However, the indictment after alleging that he was county treasurer, and said funds being $3,000 current money of the United States of America of the value of $3,000, came into his possession by virtue of his said office, and was then and there the property of Ward county, Tex., and the said L. A. Butler did unlawfully, as above stated, etc. We think the conjunction 'and' here sufficiently shows the connection, and carries forward with it the allegations 'then and there,' showing the act of conversion was committed at the time and place before alleged." Campbell v. State, 43 Tex. Cr. R. 604, 68 S. W. 513.

In Bishop's New Criminal Procedure, it is stated: "When an indictment has stated one time and one place, whether in one count or more, each repetition thereof may, and in just propriety should, be laid as occurring 'then and there' instead of by the longer form of expression." Section 407. Bouvier's Law Dictionary thus defines the words: " 'Then and there'—words of reference, and when the time and place have once been named with certainty, it is sufficient to refer to them afterwards by these words." Hughes Criminal Law, § 2726, says: "If the words 'then and there' precede every material allegation (after the time and place have been stated at the beginning of the indictment), it is sufficient." See, also, Am. & Eng. Ency. of Law, vol. 28, p. 129; Ency. of Pleading & Prac. vol. 10, p. 519; Cyc. vol. 22, p. 321; Words & Phrases, vol. 8, p. 6946. In these references there are numerous cases not only from this state but almost every state in the Union.

2. Appellant's second contention is that the facts showing that appellant purchased the beer at the request of an officer, and delivered a portion of it to him, knowing that appellant would be prosecuted, the court erred in holding that the prosecuting witness Duncan was not an accomplice. In the original opinion we cite the article of the Penal Code providing that a purchaser of intoxicating liquors shall not be held to be an accomplice. Appellant insists that this article covers only those buying in the usual course of trade, and does not include one who buys at the request of an officer knowing that a prosecution will be based thereon. This question has been before this court frequently and decided adversely to appellant's contention. In the case of Walker v. State, 72 S. W. 401, this court held: "Alexander was the purchaser, and Hightower was president of the anti-saloon league, who hired Alexander to ferret out violations of the law, and it may be conceded that Alexander induced appellant to sell him the whisky for the purpose of instituting criminal proceedings against him, and it is held that neither of them is an accomplice under article 407 of the Penal Code." See, also, Marmer v. State, 47 Tex. Cr. R. 425, 84 S.

W. 830; Fox v. State, 53 Tex. Cr. R. 155, 109 S. W. 370; Ross v. State, 53 Tex. Cr. R. 295, 109 S. W. 152; Trinkle v. State, 59 Tex. Cr. R. 257, 127 S. W. 1060; Terry v. State, 46 Tex. Cr. R. 75, 79 S. W. 320; Dane v. State, 36 Tex. Cr. R. 84, 35 S. W. 661; Ray v. State, 60 Tex. Cr. R. 138, 131 S. W. 542; Trinkle v. State, 60 Tex. Cr. R. 187, 131 S. W. 583.

3. Appellant insists that the court erred in holding, in a case wherein it is proved that one sold beer, and no question is raised in the evidence as to it being an intoxicant, that the court will take judicial knowledge that beer is an intoxicating liquor. We discussed this question at length in the original opinion; but as appellant insists that, as court held in the case of Potts v. State, 50 Tex. Cr. R. 368, 97 S. W. 477, 7 L. R. A. (N. S.) 194, 123 Am. St. Rep. 847, and other cases, we did not judicially know that beer was an intoxicating liquor, we should adhere to that line of decisions. In the original opinion we stated there had been a conflict in the decisions of this state, for, while this court was holding that it did not know that beer was an intoxicant, the civil courts had been holding otherwise. However, we will frankly say that, although the decisions of this court on that question did not appeal to our judgment, we might have followed them, as we have done in other instances, had not the Legislature provided by section 34 of chapter 17 of the Acts of 31st Legislature (1st Called Sess.): "The term intoxicating liquor as used in this act shall be construed to mean fermented, vinous or spirituous liquors or any composition of which fermented, vinous or spirituous liquors is a part." Every one knows that beer is a fermented liquor, and is a composition containing spirituous liquor as well as being a fermented liquor. If a person in a precinct where prohibition is not in force sells beer, and is prosecuted for selling beer without having obtained a license to do so, by force of this statute this court must take judicial knowledge that beer is an intoxicating liquor. If in another precinct in the same county, where prohibition is in force, a person sells "beer," appellant insists this court must hold it does not judicially know anything about it. Such position would be an absurdity, and as the great weight of authority holds that the courts judicially know that beer is an intoxicant, in accordance with these decisions, and as the above statute requires this court to take notice of its intoxicating quality in nonlocal option territory, we held, and still hold, that the members of this court are not the only persons in Texas who will continue in ignorance, and in one class of cases hold they do not know anything about beer, and in another hold that they do.

[10] Personal knowledge we may not have, but judicial knowledge can be acquired by facts which one has learned

through former litigation (Hatch v. State, 11 Tex. 708), and, if there is any one question on which this court ought to have information by reason of litigation thereon, it is what is and what is not an "intoxicating liquor." As shown in the original opinion, every official in Texas (outside of this court), whose official duties require him to do any act in connection with our license and prohibition laws, has long ago taken notice that beer is an intoxicating liquor, and requires no proof thereof. Courts may and properly should take judicial notice of facts that may be regarded as forming part of the common knowledge of every person of ordinary understanding and intelligence. Cowell v. State, 16 Tex. App. 61. The general rule is that courts will take judicial notice of such things as are or should be generally known in their respective jurisdictions, and courts will extend the scope of judicial knowledge so as to keep proper pace with the rapid advance of art, science, and general knowledge, when the facts are of such an age and duration as to have become a part of the common knowledge of well-informed persons. Minnesota v. Barber, 136 U. S. 321, 10 Sup. Ct. 862, 34 L. Ed. 455; McDaniel v. State, 76 Ala. 1; People v. Mays, 113 Cal. 618, 45 Pac. 860; State v. Main, 69 Conn. 133, 37 Atl. 80, 36 L. R. A. 623, 61 Am. St. Rep. 30; State v. Braskamp, 87 Iowa, 590, 54 N. W. 532; Kilpatrick v. Commonwealth, 31 Pa. 198; Austin v. State, 101 Tenn. 563, 48 S. W. 305, 50 L. R. A. 478, 70 Am. St. Rep. 703. In the case of Aston v. State, 49 S. W. 385, this court says: "Appellant's third contention is that the bottle exhibited by the witness Lillard, and which he stated he purchased from defendant, is not shown to have been intoxicating liquor. The proof shows that the prosecuting witness bought whisky of appellant, and it is common information that whisky is a spirituous liquor, distilled from corn and vegetables, and is highly intoxicating. It follows that the court did not err in charging the jury as to whether or not the defendant sold intoxicating liquor, because the courts take judicial knowledge of the fact that whisky is an intoxicating liquor"—citing Am. & Eng. Ency. of Law, p. 582; Redding v. State, 91 Ga. 231, 18 S. E. 289.

[11] Appellant lays great strength on the proposition that for the court to take judicial notice that beer is an intoxicant is indulging a presumption against a defendant. How it can be said that to take judicial notice that beer is an intoxicant is any more indulging a presumption against a defendant than to take judicial notice that whisky is an intoxicant, we cannot comprehend. When the courts take judicial notice of a fact, it is because it is a matter of common knowledge, and a defendant, as well as every other well-informed person, is presumed to know it, and to take as. proven a fact so well established that every one knows

it, is not indulging a presumption against a defendant; it is merely accepting what is already known by all men of any information and capable under our laws of serving on juries. What is the necessity or use of proving a fact that if every man on the jury was sworn he would state he knows from common knowledge, and, if every juryman summoned in Texas was asked if he knew whether or not whisky produced intoxication, he would answer it did. And it is a fact equally as well known by every man summoned, or that can be summoned on a jury in Texas, the article of commerce known and called "beer" as manufactured, bought, sold, and drank in this state, is intoxicating.

Appellant cites us to five Indiana cases; but if he had investigated further he would have learned that all those cases had been specifically overruled in the case of Myers v. State, 93 Ind. 252, in this latter case the court saying: "Webster defines beer to be 'a fermented liquor made from any malted grain, with hops and other bitter flavoring matters.' In other words, it is a malt liquor, which the same author declares to be 'a liquor prepared for drink by an infusion of malt, as beer, ale, porter, etc.' It may, therefore, be said that beer is a liquor infused with malt, and prepared by fermentation for use as a beverage. As a consequence, when 'beer' is called for at a place at which intoxicating drinks are sold, the bartender, having in view the primary meaning, as well as the common use of the word, is justified in inferring, and must reasonably infer, that malted and fermented beer is wanted. If any other kind of beer is desired, it is expected that qualifying words will be used, such as spruce beer, root beer, small beer, ginger beer, and the like, thus attaching a remote and secondary meaning to the word 'beer,' as descriptive of particular beverages. When, therefore, a witness testifies to the sale or giving away of beer under circumstances which make the sale or giving away of any intoxicating liquor unlawful, the prima facie inference is that the beer was of that malted and fermented quality declared by the statute to be an intoxicating liquor, and the court trying the cause ought to take judicial notice of the inference which thus arises from the use of the word 'beer' in its primary and general sense. These views are fully sustained by the recent case of Briffitt v. State, 58 Wis. 39 [16 N. W. 39, 46 Am. Rep. 621]." See, also, the other later cases cited from the Indiana Supreme Court in the original opinion.

The great length of the original opinion and this opinion will prevent us from taking up and discussing each case cited by appellant; but if he will investigate he will find that the great weight of authority in the United States holds that the courts will take judicial notice that beer is an intoxi-

cating liquor, and that in those states where it has been heretofore held that the courts did not know that beer is an intoxicant, as the years go by, and the information gets more generally disseminated that beer will produce intoxication, those courts are keeping abreast of the times and are overruling their earlier decisions, as in Indiana, and holding that the courts do take judicial notice that beer is an intoxicant. At one time when beer had just begun to be manufactured and used as a beverage in the United States (and this is in the memory of some men now living), it may be that it was not a matter of common knowledge that it would produce intoxication; but its manufacture, use, and sale has become so general in the United States in this day and time that no man with intelligence can longer feign ignorance of a fact that is so generally known and accepted to be a fact. Many authorities other than those quoted in the original opinion could be quoted and cited, but we deem it unnecessary.

The motion for rehearing is overruled.

DAVIDSON, P. J. (dissenting). Affirming the judgment for a violation of the local option law, my Brethren held that the mere fact that the liquid purchased was "beer" judicially informs them that said "beer" was an intoxicant, and therefore the evidence sustains the conviction. I have heretofore understood the law to be otherwise when the evidence showed that the intoxicating liquor alleged to be sold in violation of the local option or prohibition law was a malt liquor, or even when the witnesses called it "beer" or "lager beer." The Constitution, art. 16, § 20, only prohibits the sale of "intoxicating liquors" where the voters have put the local option law into operation. The statutes enacted in obedience to this constitutional provision so declare, and this expressly. I have also been led to believe, under all the decisions in this state, that when the Constitution expressly declares how a thing may be done, or places a limitation upon the authority of the departments of government, that such provisions control and cannot be overruled, set aside, modified, or changed by the legislative department or the judiciary. It has been held by the unbroken line of decisions in this state that in a violation of the local option statutes the liquid sold must be an "intoxicant," and this is so by express provision of the statute. In determining the criterion of what it takes to constitute such intoxicant, the rule is thus declared: "Any liquor intended for use as a beverage, or capable of being so used, which contains alcohol, either obtained by fermentation or by the additional process of distillation in such a proportion that it will produce intoxication when taken in such quantities as may practically be drunk, is an intoxicant." This quotation is found in Decker v. State, 39 Tex. Cr. R. 20, 44 S. W. 845, an opinion by

Judge Hurt, then Presiding Judge of this court. The quotation was from Mr. Black on Intoxicating Liquors. This case has been followed as correct and declared to be the law in all cases since its decision and by all the courts of this state. Ex parte Gray, 83 S. W. 828; Pike v. State, 40 Tex. Cr. R. 615, 51 S. W. 395; Mason v. State, 56 Tex. Cr. R. 262, 119 S. W. 852; Scales v. State, 47 Tex. Cr. R. 295, 83 S. W. 380; Murray v. State, 46 Tex. Cr. R. 131, 79 S. W. 568; Greiner-Kelley Drug Company v. Truett (Civ. App.) 75 S. W. 537. The latter case, supra, was approved in the case of State v. Gillispie in 63 W. Va. 156, 59 S. E. 957. For a further collation of authorities, see Mr. Branch's Criminal Law of Texas, §§ 555, 557, where many cases are enumerated.

Under this line of authorities it has heretofore been thought by the bench and bar of this state, as the declared law, that it is a matter of evidence whether "malt liquor" is or is not an "intoxicant" in local option territory, and it has also been understood by courts and attorneys that the Legislature nor any department of government could declare a thing to be something that in fact it was not. It would be rather difficult to conceive how the Legislature could declare that alcohol or whisky would not and could not be an intoxicating liquor. It would be equally as difficult to understand how that body could declare legally that any liquid would intoxicate when it would be an utter impossibility in fact for such liquid to have such effect. The Legislature nor courts have authority to declare a falsehood to be the truth, or the truth to be a falsehood. It would be an absurdity to say that the Legislature could abolish the law of cause and effect. It would scarcely be necessary, I think, to cite authorities in support of the proposition that the Legislature is powerless to convert water into wine, or that this court could judicially declare that body has such omnipotence. It has not been heretofore determined that the mere fermentation of liquids could form the basic principle of governmental authority by which the citizenship of the state should be rendered infamous for the sale of the Old Plantation "potato beer," or therefor the Old Black Mammy of our Southland should be incarcerated in the penitentiary for manufacturing and selling her brew of "persimmon beer." A wise man once upon a time said: "Because the preacher was wise he still taught the people knowledge; yea, gave good heed and sought out and set in order many proverbs." Ecclesiastes, chap. 12, verse 9. The same wise preacher again recorded that he "gave his heart to seek and search out by wisdom concerning all things that are done under the heavens," and reached the conclusion that "the thing that hath been, it is that which shall be; and that which is done is that which shall be done; and there is no new thing under the sun." Same, chap. 1, verse 9. This solemn

declaration may have been considered the enunciation of concrete truth when written by "the preacher, the son of David, king in Jerusalem"; but he did not forecast that the "time will come when they will not endure sound doctrine, but after their own lusts shall they heap to themselves teachers having itching ears; and they shall turn away their ears from the truth and shall be turned unto fables." 2 Tim. chap. 4, verses 3 and 4. Nor did the wisdom of Solomon comprehend that after many centuries knowledge would so increase and wisdom so augment itself that old things would pass away and all things would become new "under the sun." It may be that the prestige of the royal "preacher" will become a reminiscence only to be remembered as Sunday school lore. The Savior, while upon earth, by His first miracle at Cana of Galilee, converted water into wine; but it is left for the latter day miracle working power to convert all fermented liquids into intoxicating beverages.

My Brethren seem to have lost sight of or ignored the distinction between a statute, which regulates the sale of liquor and one which prohibits such sale. Under statutes regulating the sale and imposing a tax upon the sale, it is not necessary to prove the intoxicating properties, *if the statute so provides*; but if the statute *does not so provide*, but limits the regulation to *intoxicants*, then in order to secure a conviction for a violation of the law it must be shown that the liquid sold was an intoxicant. Stoner v. State, 5 Ga. App. 716, 63 S. E. 602; Eaves v. State, 113 Ga. 749, 39 S. E. 318. Such, also, is the rule in many of the other states. Where the statute is one of prohibition of the sale of intoxicants altogether, as our local option law, then in order to secure a conviction the evidence must show the liquid sold to be an intoxicant. It will be noted that in Texas this distinction is kept plainly in view in the definition of intoxicants, and the distinction between regulation and prohibition is also legislative, and a broad distinction is kept up in this state between intoxicating and nonintoxicating malt liquors. The act of 1909 (Acts 1st Called Sess. 31st Leg., c. 17), popularly known as the Robertson-Fitzhugh act, defines intoxicants as follows: "Sec. 34. The term 'intoxicating liquor,' as used in this act, shall be construed to mean fermented, vinous or spirituous liquors or any composition of which fermented, vinous or spirituous liquors is a part; and all of the provisions of this act shall be liberally construed as remedial in character." My Brethren have taken this as authority for holding that they would judicially know that "beer" would be an intoxicant in local option territory where a conviction was sought for violating the provisions of the local option law. It will be noted, in this connection, that this act of the Legislature expressly has no reference to, nor is it sought to be made effective in,

local option territory. On the contrary, the provisions of this bill have been expressly excluded from operating in local option territory, as is evidenced by section 1 of the bill, which provides: "Hereafter there shall be collected from every person, firm, or association of persons selling spirituous, vinous or malt liquors, or medicated bitters capable of producing intoxication, in this state, *not located in any county ·or subdivision of a county, justice precinct, city or town where local option is in force under the laws of Texas*, an annual tax of three hundred and seventy-five ($375) dollars," etc. Again section 9j of the same act provides that at least one permit shall be issued in any city, town, or justice precinct where local option is not in effect. Again, the local option law is excluded in section 14, as it is in section 18. Section 27 of said act thus provides: "This act, or any of the provisions thereof, shall not be construed to be in conflict with any local option law now or hereafter to be in force in this state, and no license to any retail liquor or retail malt dealer shall be issued or shall be effective at any place where local option law is in force and operation." Then by the express provision of this act it is excluded from operation in local option territory. It has been held in all the decisions from Robertson's Case, in 5 Tex. App. 155, until this decision, that where the local option law is made operative in a given territory it excludes all other manner or means of selling intoxicants, and it is expressly held that in such territory intoxicants can only be sold in obedience to the provisions of said local option law.

That I may not misstate my Brethren on their position, I make this quotation from the opinion on rehearing: "However, we will frankly say that, although the decisions of this court on that question did not appeal to our judgment, we might have followed them, as we have done in other instances, had not the Legislature provided by section 34 of chapter 17 of the Acts of 31st Legislature (1st Called Sess.): 'The term intoxicating liquor as used in this act shall be construed to mean fermented, vinous, or spirituous liquors or any composition of which fermented, vinous or spirituous liquors is a part.' Every one knows that beer is a fermented liquor, and is a composition containing spirituous liquor as well as being a fermented liquor. If a person in a precinct where prohibition is not in force sells beer, and is prosecuted for selling beer without having obtained a license to do so, by force of this statute this court must take judicial knowledge that beer is an intoxicating liquor. If in another precinct in the same county, where prohibition is in force a person sells 'beer,' appellant insists this court must hold it does not judicially know anything about it. Such position would be an absurdity, and, as the great weight of authority hold

that the courts judicially know that beer is an intoxicant, in accordance with these decisions, and as the above statute requires this court to take notice of its intoxicating quality in nonlocal option territory, we held, and still hold, that the members of this court are not the only persons in Texas who will continue in ignorance, and in one class of cases hold that they do not know anything about beer, and in another hold that they do. Personal knowledge we may not have, but judicial knowledge can be acquired by facts which one has learned through former litigation (Hatch v. State, 11 Tex. 708), and if there is any one question on which this court ought to have information by reason of litigation thereon, it is what is and what is not an intoxicating liquor."

I have copied the above that I may be understood in what I may have to say in regard to this phase of the opinion. As before stated, my Brethren do not seem to keep in mind the distinction between statutes regulating the sale of malt liquors where such statutes declare all malt liquors, as this does, to be intoxicants, and those statutes which prohibit only intoxicating liquors. This court, as the other courts of Texas have, has always held that, where the intoxicant is shown to be whisky, the court will take judicial knowledge of the fact that it is an intoxicant; but, where it is a malt liquor, the rule has been invariably laid down the other way pertaining to local option territory. Branch's Criminal Laws of Texas, § 555, collates the authorities in support of this proposition. The statute requires liquor to be intoxicating under the local option law; therefore the proof must show the liquor to be intoxicating. Davis v. State, 36 Tex. Cr. R. 393, 37 S. W. 435; Barnes v. State, 44 S. W. 492; Faucett v. State, 73 S. W. 807; Scales v. State, 47 Tex. Cr. R. 294, 83 S. W. 380; Ex parte Gray, 83 S. W. 828; Racer v. State, 73 S. W. 807; Schwulst v. State, 52 Tex. Cr. R. 426, 108 S. W. 698; McDonald v. State, 49 S. W. 589; Beaty v. State, 53 Tex. Cr. R. 434, 110 S. W. 449. If the only proof is that the liquor was called "beer" or "lager beer," it is insufficient to show that it was intoxicating under that law. Harris v. State, 86 S. W. 763; Sullivan v. State, 48 Tex. Cr. R. 201, 87 S. W. 150; Cassens v. State, 48 Tex. Cr. R. 186, 88 S. W. 229; Potts v. State, 89 S. W. 836; Potts v. State, 50 Tex. Cr. R. 368, 97 S. W. 477, 7 L. R. A. (N. S.) 194, 123 Am. St. Rep. 847; Schwulst v. State, 52 Tex. Cr. R. 426. It has been further held under that law that evidence that liquor was a malt liquor is not sufficient to show that it was an intoxicant. Barnes v. State, 44 S. W. 492; Scales v. State, 47 Tex. Cr. R. 294, 83 S. W. 380; Uloth v. State, 48 Tex. Cr. R. 295, 87 S. W. 823. It is also held that an allegation that the liquor was "beer" is not sufficient of itself to charge that the liquor

was an intoxicant. Harris v. State, 86 S. W. 763. The same question was presented in the form of charges in the trial court, and it has been held uniformly that a charge is error which assumes that "beer" or "lager beer" is intoxicating. Potts v. State, 50 Tex. Cr. R. 368, 97 S. W. 477, 7 L. R. A. (N. S.) 194, 123 Am. St. Rep. 847. It has further been held that when the issue is raised as to the liquor being intoxicating, it is error to refuse a charge correctly defining intoxicating liquors. Mason v. State, 56 Tex. Cr. R. 261, 119 S. W. 852; Ross v. State, 52 Tex. Cr. R. 604, 108 S. W. 375; Malone v. State, 51 S. W. 381; Uloth v. State, 48 Tex. Cr. R. 298, 87 S. W. 823; Lee v. State, 55 Tex. Cr. R. 379, 116 S. W. 1153; Hendrick v. State, 47 Tex. Cr. R. 371, 83 S. W. 711; Walker v. State, 50 Tex. Cr. R. 495, 98 S. W. 843. It has also been decided if the issue is raised as to whether the liquor was an intoxicant, it is error to refuse to charge the jury to acquit if they have a reasonable doubt that the liquor was intoxicating. Robinson v. State, 49 S. W. 386; Rutherford v. State, 48 Tex. Cr. R. 431, 88 S. W. 810; Mayne v. State, 48 Tex. Cr. R. 93, 86 S. W. 329. A charge that any beverage containing alcohol is an intoxicant is error. Walker v. State, 98 S. W. 265. It was also held error to charge the jury that intoxicating liquor is any liquor used as a beverage that has a sufficient quantity of alcohol to produce intoxication in any degree. Mason v. State, 56 Tex. Cr. R. 265, 119 S. W. 852; Murray v. State, 56 Tex. Cr. R. 439, 120 S. W. 437. A charge is held error which defines intoxicating liquor as a liquor used as a beverage for the purpose of becoming intoxicated. Decker v. State, 39 Tex. Cr. R. 23, 44 S. W. 845. The definition given by Mr. Black and quoted by Judge Hurt in the Decker Case, supra, has been approved in subsequent decisions. See Malone v. State, 51 S. W. 381; Murray v. State, 56 Tex. Cr. R. 421, 120 S. W. 438. If these decisions lay down the correct rule in regard to the necessary proof as to what is an intoxicant, and charges which are required to be given to legally submit this issue to the jury, in a local option case, then my Brethren are clearly in error in holding that this court has judicial knowledge that "beer" is an intoxicant under the local option law. The same rule, as before stated, does not apply where whisky is the intoxicant sold, and the charge submitting the issue as to whisky being the intoxicant is not required in such case. From this viewpoint, or from these points of view, the decision of my Brethren is in the face of and contrary to every decision this court has ever rendered. These statutes have been enacted and re-enacted by the Legislature, changed, and modified, amended, and enlarged with these decisions the well-settled law, then the same rule of construction invoked by my Brethren justifies the state-

ment that such legislation was enacted with reference to local option law in view of the well-settled jurisprudence as enunciated by the court.

I desire to call attention here, and emphasize the statement, that my Brethren have by this opinion held that the definition in the Fitzhugh-Robertson license law, applicable to and controls the sale of beer in local option territory, and they make their judicial knowledge, growing out of the fact that "beer" was sold, the basis of the affirmance of this judgment. The facts of the case show nothing except the bare statement that the purchaser bought a "bottle of beer," and that simply upon the statement of the seller to the purchaser. The contents of the bottle was not shown, nor was there any attempt to show that it was intoxicating liquor. The evidence simply shows that the purchaser asked for a "bottle of beer," and the statement is made that appellant sold him a "bottle of beer." There is perhaps another rule which I might invoke at this juncture, well known in criminal jurisprudence; that is the extrajudicial confession of a party accused of crime does not prove the crime. You cannot prove the corpus delicti by such confession. There must be evidence of the fact that an intoxicant was sold. The state's whole case was that the appellant stated that it was beer upon the inquiry of the purchaser to buy beer. The purchaser does not say it was an intoxicant; the appellant did not confess that it was an intoxicant. There must be some evidence of the fact that the liquid bought was an intoxicant. There is·here no evidence, outside of the statement made that it was "beer," as might produce intoxication.

The judicial knowledge of the court, as stated by my Brethren, seem under the late decision of this court in Ex parte Townsend to be in more than serious doubt. In that case a statute enacted by the same Legislature which enacted the Fitzhugh-Robertson bill was held to be constitutional and subject to violation. That law was passed by the same Legislature which passed the Fitzhugh-Robertson bill, but at an earlier day in the session. On page 51 of the Acts of the 31st Legislature will be found this act: "There is hereby levied upon all firms, persons, associations of persons and corporations selling nonintoxicating malt liquors an annual state tax of two thousand ($2,000) dollars. Counties, incorporated cities and towns where such sales are made may each levy an annual tax of not exceeding one thousand ($1,000) dollars upon all such persons, firms or corporations; provided, that this section shall not prevent· the sale of such proprietary remedies as 'malt extract,' 'malt medicine' and 'malt and iron' manufactured and used exclusively as medicine and not as a beverage, when sold upon the prescription of a regular practicing physician; provided further that no more than one sale shall be made upon any one prescription." The applicant, Townsend, was arrested for violating this act, and this court granted an original application of habeas corpus and heard the case. It was agreed in that hearing that the county of Orange, where the case arose, was not operating under the local option law; but it therefore was operating under the Fitzhugh-Robertson act. The facts further showed in the Townsend Case that there were parties selling malt liquors in that county under the provisions of the Fitzhugh-Robertson law and in the same town where relator was selling his nonintoxicating malt liquors. The only difference between the liquors Townsend was selling and that the others were selling, if any difference there was, was in the percentage of alcoholic body. ·The liquor sold by Townsend and this defendant was fermented or malt liquor. Under the Fitzhugh-Robertson act the liquor that he was selling was an intoxicant under the definition contained in section 34 of that act heretofore quoted in this dissent. Of this there is and was no question. Under the definition in the Fitzhugh-Robertson act the *malt liquor* that Townsend was selling in Orange county was an intoxicant, because it *was malt liquor* and what is commonly known as "Hiawatha"; and, as my Brethren say, they go to the decisions heretofore rendered to ascertain what Hiawatha is, I may invoke that rule and say it was "beer" containing less than 2 per cent. alcoholic body. Yet my Brethren hold in the county where the Fitzhugh-Robertson law was operative, that malt liquor was not within the definition of the Fitzhugh-Robertson act, and was not an intoxicant, but was a nonintoxicant under the other act, though both were fermented or malt liquors. We have the paradoxical situation now of the Fitzhugh-Robertson law declaring such malt liquors intoxicating liquors operative in local option territory, and yet not intoxicating in territory where local option is not in vogue; and we have at the same time the nonintoxicating liquor law operative in nonlocal option territory and the Fitzhugh-Robertson law operative in local option territory. It will thus be seen that my Brethren by strange and paradoxical construction have placed the Fitzhugh-Robertson law operative in local option territory and the nonintoxicating liquor statute operative in "wet" territory and in territory where only the Fitzhugh-Robertson act can be made to operate. We have still another curious condition of things by reason of the decision in this case, and that in the Townsend Case, supra—that is, the Fitzhugh-Robertson definition of intoxicants applying in the county of Orange with a tax of $125, and at the same time the nonintoxicating liquor statute operative in the same territory—one defining all compositions of which fermented, vinous, and spirituous liquors is a part to be an intoxicant, and the other declaring a tax of

$4,000 on nonintoxicating liquors which are excluded by the definition of intoxicants in the Fitzhugh-Robertson law. Under the Fitzhugh-Robertson law both are intoxicants. It has been heretofore thought to be an axiomatic truth that two bodies cannot occupy the same space at the same time, and it has been thought to be equally axiomatic in law that two antagonistic laws on the same subject could not be operative at the same time in the same territory; but by this opinion and that in the Townsend Case these two axiomatic truths have been found untrue. Solomon is a proven myth, and his proverb that there is "nothing new under the sun" has been demonstrated to be a fallacy. But the world has been spinning down the grooves of change 3,000 years since then, and knowledge has run to and fro in the earth and wisdom has increased.

For the reasons above indicated, I most respectfully enter my dissent.