## Charles Potts v. The State.

### No. 3572. Decided October 31, 1906.

**1.—Local Option—Beer—Question of Fact Whether Intoxicating.**

Where upon trial for a violation of the local option law, the evidence showed that defendant had sold a liquid which was called lager beer, and there was no testimony that the beverage sold was lager beer in fact, or if it was that it was intoxicating, it was error to charge that lager beer was an intoxicant, and the evidence was insufficient to support a conviction.

**2.—Intoxicating Properties of Beer—Name of Beverage.**

In order to come under the violation of the local option law, the State must show that the liquid alleged to have been sold, was of sufficient alcoholic body to produce intoxication if drank in reasonable quantities, without reference to its name or supposed quality.

Appeal from the County Court of Camp. Tried below before the Hon. J. D. Best.

Appeal from a conviction of a violation of the local option law; penalty, a fine of $25 and twenty days confinement in the county jail.

The opinion states the case.

*W. M. Ballew* and *John W. Hooper,* for appellant.

*J. E. Yantis,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of violating the local option law. It is contended, first, that the court erred in charging the jury that lager beer was an intoxicant; and second, that the evidence is not sufficient to support the conviction. Under the decisions of this court error assigned in regard to the charge cannot be considered, as no exception was taken during the trial or on motion for new trial.

Witness Cadenhead testified that he went to Pittsburg with Puckett. On reaching town, on the invitation of Puckett, he went to defendant's cold storage and he and Puckett drank "two bottles of beer." These were set out by appellant. Puckett presented defendant with a ticket which defendant punched. About an hour afterwards, on invitation of Puckett appellant drank more beer. He inquired of Puckett how he managed to get the beer, and being informed that he would have to order it, he went to appellant and gave him an order "for a dozen bottles of beer," for which he paid $1.50. He paid the money, and called for three bottles, which he, Puckett and King drank. Later this was repeated. When witness left he still had six unpunched numbers on his ticket, each of which called for a bottle of beer. This witness testified at this point, as follows: "The beer was lager beer. I do not know the meaning of the word 'lager'; but they called it 'lager' beer." This is the testimony and all of the testimony upon

which the conviction is predicated; as this was the only witness. If there is any testimony indicating that this was lager beer, or that the beer witness obtained was intoxicating it is found in the statement above. We are of opinion that this is not sufficient to show intoxicating properties. The witness did not know that it was lager beer. His testimony states, that when he bought it, they called it "lager beer." We do not believe that the evidence is sufficient to show beyond a reasonable doubt that the mere statement that they called the beer he bought "lager beer" would in fact make it lager beer. Nor under our decisions are we prepared to hold that lager beer is judicially known to be an intoxicant, even if the testimony was clear and unequivocal that the bottles contained lager beer. The authorities are divided as to whether or not the court will take judicial cognizance that lager beer is an intoxicant, even when the evidence is clear and conclusive that the beer was lager beer. Speaking of lager beer, Mr. Black, says, as to whether or not evidence of its intoxicating properties is required: "The weight of authority appears to be with the cases holding that courts will take judicial notice that beer of this variety is intoxicating, and that it need not be shown to be so by evidence. But there are also decisions to the effect that lager beer must be shown to be capable of producing entire or partial intoxication, and that this is a fact to be ascertained by the jury upon the evidence in the case. In some of the earlier statutes and decisions, similar questions arose in relation to the character and status of what was then denominated 'strong beer.' This term, though now practically obsolete, was once in familiar use as the name of a species of beer made of malt and hops, and so called in order to distinguish it from 'small beer,' which was compounded of molasses and yeast with the addition of either ginger or spruce, and which contained a very small percentage of alcohol. The 'strong beer' seems to have been rich in the intoxicating principle, chemical analysis (in one of the reported cases) showing the presence of alcohol in the proportion of eight per cent. And the courts had no difficulty in determining that this particular beverage was an intoxicating liquor within the meaning of the statutes on that subject. But as it differed from the lager beer of modern commerce both in the process of its manufacture and in the proportion of alcohol contained (the latter being a very much lighter fluid) the courts appear to be unwilling to be bound, in their judicial dealing with beer of to-day, by the precedents relating to the beer of a past generation. At least, there are some decisions, particularly in New York, not explainable on any other hypothesis." In Massachusetts it was held that the fact that a given quantity of beer contains a certain percentage of alcohol, or that a gallon of beer contains as much alcohol as does a pint of whisky, is not conclusive upon the question whether or not the beer is intoxicating. These quotations are from Black on Intoxicating Liquors, sec. 17, pages 21–2, and see footnotes for authorities cited.

Vol. 50 Crim.—24.

The question has been before this court in quite a number of cases, under our local option law, when the general term "beer" was used, and it has been invariably held that the court did not judicially know that the general term "beer" meant an intoxicating liquor. Nor do the decisions rest at that point. They go further and hold that where a conviction is sought under the local option law, that the commodity sold must be shown to be intoxicating. Ex parte Gray, 83 S. W. Rep., 828; Scales v. State, 83 S. W. Rep., 380; Harris v. State, 86 S. W. Rep., 763; Cassens v. State, 88 S. W. Rep., 229; Sullivan v. State, 87 S. W. Rep., 150; Rutherford v. State, 88 S. W. Rep., 810; Potts v. State, 89 S. W. Rep., 836; Uloth v. State, 87 S. W. Rep., 822. And to the same effect see, Rau v. Peo., 63 N. Y., 277; Blatz v. Rohrback, 116 N. Y., 450; 6 L. R. A., 669; Sarlls v. U. S., 152 U. S., 570; Nevin v. Ladue, 3 Denio, 437; State v. Beswick, 13 R. I., 211; 43 S. W. Rep., 36; Weis v. State, 33 Ind., 204; Kurz v. State, 79 Ind., 488; Klare v. State, 43 Ind., 483; State v. Sioux Falls Brewing Co., 26 L. A. R., 138; Hansberg v. Peo., 120 Ill., 21; 60 Am. Rep., 549; Netso v. State, 1 L. R. A., 825.

The rule has been laid down differently where the general term "beer" is used. Some of these were under statutes peculiar to the States, or in the jurisdictions where the decisions were rendered, and it would be practically of little value to take these under consideration and show the difference where they exist. If the intoxicant charged to have been sold was whisky, or rum, or any beverage or fluid known and recognized generally as being intoxicating, and known to be by reason of the alcoholic body, the court would take judicial cognizance of the fact that it was intoxicating. An investigation of the different kinds and character of beer, and the alcoholic strength of these various liquids might be entertaining and interesting, but where the formula runs from about 1.60 per cent. alcoholic strength to 4 and 4½ per cent., and the intoxicating properties depend upon the percentage, it would hardly require reasoning to show that the liquids sold, in order to come under the violation of the local option law, must be of sufficient alcoholic body to produce intoxication if drunk in reasonable quantities. It has been the rule, where these lighter drinks have been relied upon to sustain a conviction in a local option case, that it must be made to appear that the liquid was intoxicating within the rule just announced. If not, then the law has not been violated. The mere fact that the party drank a bottle of beer, and he called it lager beer, is not in our judgment sufficient to authorize the court to instruct the jury that the liquid was intoxicating. There must be evidence of the fact that it was an intoxicant. The presumption of innocence should be overcome by proof of sufficient cogency to exclude the reasonable doubt of that innocence. In the particular case in hand, the only evidence, sifted to its final analysis, is the witness' statement that they called it "lager beer," but that he did not know what the word "lager" meant. He was not even asked, nor

did he testify as to any effect it had upon him. He states that he drank two bottles of beer with Puckett, and that he and King and Puckett drank six bottles that he purchased from appellant. Yet he was not asked nor does he testify that it had any effect upon him in the direction of intoxication. The decisions of this State have rather rigidly held to the proposition that we would sustain convictions for the sale of intoxicants in violation of the local option law, whenever the ingredients were shown to be an intoxicant, without reference to its name or supposed quality. If the fact was made to appear that the liquid was an intoxicant, and that such was or would be its effect if drunk in reasonable quantities, we have sustained convictions, so far as the weight of the testimony is concerned. We believe this to be a wise and salutary rule in the enforcement of this law. It is not the name they call the liquid, but its quality and its strength when viewed as an intoxicant. For the court to hold that Frosty Uno, Ino, Hiawatha, and the various other brands of fermented liquors shipped into local option territory are not per se intoxicating would lay down a rather dangerous precedent for the enforcement of this law. It would be a very easy matter for those who desire to evade its provisions to put one of these labels upon the bottles. The law would be rapidly brought into disrepute and with facility evaded. On the other hand it might be dangerous to the liberty of the citizenship of the country to hold that because they called it "lager beer," or that it was labeled "lager beer," or that in fact it was "lager beer," that it was therefore an intoxicant. It might not be, and the citizen would be unjustly punished. It is a matter of proof whether it is, or is not intoxicating. Therefore we are of opinion that the evidence in the record is not sufficient to justify an affirmance of this case. If the contents of these bottles were intoxicating, it was a matter easily susceptible of proof. Certainly a man who testified before the court to drinking as many as six bottles of what they called "lager beer," would be able to know whether or not it had an intoxicating effect upon him. Yet this record is wanting in any testimony intimating such a result.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*