## Gourley v. Commonwealth.

(Decided October 12, 1910.)

Appeal from Lee Circuit Court.

1. Intoxicating Liquor—Judicial Notice—Evidence.—Under an indictment for selling liquor in violation of the local option law, evidence that the accused sold a beverage called "Malt Mead"

without proof that it was spirituous, vinous or malt liquor or an intoxicating beverage, was not sufficient to sustain a conviction.

2.  Judicial Notice.—The court will take judicial notice that the spirituous and vinous liquors known as whiskey, brandy, wine, gin, and rum, and the malt liquors known as common, lage. and bock beer, or ale, are intoxicating; and it is not necessary to prove their intoxicating effects. Evidence of a sale in violation of law will be sufficient to sustain a conviction. But if the liquor or beverage is not one of, those mentioned, then the Commonwealth to secure a conviction must prove that it will or may intoxicate.

3.  Evidence.—The name given to a beverage, whatever it may be called by the manufacturer or person who sells it, does not necessarily fix its status as a drink that may or may not be sold in local option territory.

4.  Same.—Although the prosecuting witness said the "Malt Mead" he purchased did not intoxicate him, it would be competent for other witnesses to testify that they purchased from the accused, at or near the time the prosecuting witness did, "Malt Mead" that did intoxicate them.

5.  Same.—If the Commonwealth had shown that the beverage known as "Malt Mead" was manufactured or prepared according to a prescribed formula, and that it would intoxicate if drunk in sufficient quantities, this evidence would be competent and sufficient to sustain a conviction.

6.  Intoxication Test.—It is the fact that the liquor or beverage will or may produce intoxication that is the final standard by which the legality or illegality of its sale is to be tested, as the law was not intended to and does not forbid the sale of non-intoxicating beverages.

7.  Intoxication.—"Intoxication" is not a technical word needing expert testimony to explain or define it. Therefore a person, who has drunk a beverage said to be intoxicating, may testify whether or not it intoxicated him, and also as to its intoxicating effects upon other persons.

8.  Intent or Good Faith of Accused.—If the liquor or beverage is one that will or may intoxicate, it is wholly immaterial that the accused believed that it would not, or that in good faith he bought it as a non-intoxicant, or that he was ignorant of its quality or ingredients. It is the act the law looks to, and by the act the guilt or innocence of the accused is to be judged.

9.  Alcohol.—Alcohol in some form or other is the intoxicating property in every drink or beverage, and so the dealer that sells a beverage that contains alcohol in any quantity takes the risk of its being an intoxicant.

SUTTON & HURST for the appellant.

JAMES BREATHITT, Attorney General, TOM B. McGREGOR, Asst. Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

Appellant, under an indictment charging him with the offense of selling and furnishing spirituous, vinous, intoxicating or malt liquors to W. G. Pryse in violation of the local option law was found guilty by the jury and sentenced by the court to pay the fine imposed. He asks a reversal of the judgment because the court erred in admitting incompetent evidence and in failing to instruct the jury to acquit him. This last ground is based upon the theory that if the incompetent evidence had been excluded, there was not sufficient evidence to authorize the submission of the case to the jury.

Pryse testified in substance that he bought from the appellant, and paid for, a liquor called "Malt Mead," but that it did not intoxicate him, nor have any intoxicating effect upon him. The commonwealth then introduced W. B. Steele and other witnesses, who, over the objection of the appellant, were permitted to testify that they had drunk a beverage called "Malt Mead," which intoxicated them, but they did not obtain any of it from appellant, nor did they know what kind of a drink he sold to the prosecuting witness Pryse.

As the only witness who testified that he purchased from the appellant "Malt Mead" said it did not have an intoxicating effect upon him, there was no evidence that the beverage called "Malt Mead" sold by the appellant was an intoxicating drink, nor was there any evidence that it was the malt liquor commonly known and called beer or ale, or that it was a spirituous or vinous liquor. consequently there was no competent evidence to sustain a conviction. and the court should have directed the jury to find the appellant not guilty.

We have heretofore ruled that the trial courts and this Court will take judicial notice that spirituous and vinous liquors, such as whiskey, brandy, wine, rum and gin. as well as the malt liquor commonly known as beer —whether it be common, lager or bock beer,— are intoxicating, and as the malt liquor known as ale contains a greater per cent of alcohol than beer, it may properly be said that courts will judicially know it is also an intoxicating beverage. And so when it is proven that a person charged with a violation of the local option law has sold either spirituous or vinous liquor, or the malt liquor mentioned, by whatever name it may be

designated or labeled, it is not necessary that the commonwealth should prove that either of these liquors is intoxicating. It will be sufficient to show a sale in violation of law. Mitchell v. Commonwealth, 106 Ky. 602; Pedigo v. Commonwealth, 24 Ky. Law Rep. 1029; Commonwealth v. Hurst, 23 Ky. Law Rep. 365; Locke v. Commonwealth, 25 Ky. Law Rep. 76; Flanders v. Commonwealth, 140 Ky 38.

It is probable that "Malt Mead" comes within the general definition of a malt liquor, but in the absence of evidence showing that it was intoxicating or that "Malt Mead" was a spurious name for one of the beers mentioned, it was not enough to show a sale of it, unless accompanied by evidence that it was an intoxicating liquor. Whatever the ingredients of this beverage, or whatever the amount of alcohol it contains, and we have no knowledge or information on either of these points, it has not yet become so well known a drink in this jurisdiction at least as to have a reputation that will enable our courts to take judicial notice of its contents. It is likely that there are many intoxicating beverages that would be embraced by the general appellation of spirituous and vinous liquors besides those known as whiskey, brandy, wine, rum, and gin; and that there are liquors known as malt liquors besides beer and ale, that the courts might take judicial knowledge of as intoxicating liquors, but as it would not be pertinent to the matter in hand to express an opinion on this, we refrain from doing so. It is proper, however, to say that while there is not much difficulty in determining that all spirituous and vinous liquors are intoxicating, there are many beverages that might appropriately be called malt liquors that are not intoxicating. It is therefore necessary when the evidence for the Commonwealth does not show that the beverage sold was either spirituous or vinous liquor or the malt liquor commonly known as beer or ale, that it should be proven that it was an intoxicating beverage, or a beverage that would intoxicate. And we may here observe that the name, whatever it may be given to the beverage by the manufacturer or person who sells it, does not necessarily fix its status as a drink that may or may not be sold in local option territory. The legality of the sale will be determined by what the liquor or beverage actually is, and not by what is called or branded. So much ingenuity in the selection of deceptive and misleading

names is displayed by those who purpose and desire to evade the law against the sale of liquor that the name given to a drink or beverage does not always signify that it is the character of drink that its name would indicate. Before the anti-liquor sentiment became so strong in this state, and at a time when there were few places in which it was necessary for liquor manufacturers or dealers to misbrand or misname their goods, the general terms spirituous, vinous and malt liquors, as these words were commonly understood, were deemed sufficient to embrace all intoxicating liquors offered for sale, such as whiskey, brandy, wine, rum, gin, beer, and ale, and as these liquors were all considered intoxicating it was not necessary in statutes prohibiting their sale to add, as do the later statutes on this subject, the words "or any intoxicating liquor by whatever name called." But, with the advent and growth of local option legislation many novel as well as deceptive titles were given to spirituous, vinous and malt liquors, for the purpose of evading the law, and numerous newly-named intoxicating beverages were put on the market to take the place of the ones formerly sold under their genuine title. Manufacturers and distillers in the preparation of what are usually called "soft drinks" are constantly endeavoring to get up beverages that will be within the law and yet as near the forbidden line as possible. To meet this new condition of affairs, the General Assembly found it necessary in local option and anti-liquor legislation to extend the prohibitory provisions to any beverage whatever called that might cause or produce intoxication. So that now if the drink sold is not spirituous or vinous or the malt liquor generally known as common, lager or bock beer, or ale, and if a prosecution can not be sustained for a sale of either of these liquors, the offender may yet be prosecuted and punished for selling any liquor or beverage by whatever name it may be called that will or may produce intoxication. City of Bowling Green v. McMullen, 134 Ky. 742. To put the proposition in another way, it is the fact that the liquor or beverage will or may produce intoxication that is the final standard by which the legality or illegality of its sale is to be tested. It is the sale of liquor that will or may intoxicate that is prohibited, as the law was not intended to, and does not, forbid the sale of non-intoxicating beverages. It is however to be kept in mind that when a prosecution is instituted for the illegal sale of spirituous, vinous or

malt liquors, if the Commonwealth can show that the liquor sold was either spirituous or vinous or the malt liquor generally known as common, lager or bock beer, or ale, by whatever name called by the manufacturer or vendor, the court will judicially presume that the liquor is intoxicating; and it is not necessary that evidence of its intoxicating effect should be introduced. But if the liquor shown to be sold is not spirituous, or vinous, as these words are generally understood, and is not common, lager or bock beer, or ale, then it is necessary to sustain a conviction that there should be some evidence that the liquor sold will produce intoxication, and the question becomes one of fact for the jury.

In this connection, we may add that intoxication is not a technical word needing expert testimony to explain or define it. Drunkenness or intoxication in more or less degree is so common that there are few adult males who have not witnessed the intoxicating effect of liquor on other people, and therefore a person who has drunk a liquor or beverage said to be intoxicating may testify whether or not it intoxicated him, and he may also testify as to its intoxicating effect upon other persons that he knew had drunk the same kind of liquor or beverage. And if there is an issue for the jury as to whether or not the accused sold a beverage that was intoxicating, it is not necessary that the court should define the meaning of the word intoxicate. Nor is it necessary that the Commonwealth should show that the beverage will intoxicate every person who uses it in the largest practicable quantity. It will be sufficient to show that any person who uses it in the largest practicable quantity will become intoxicated.

The next question is, the competency of other witnesses than Pryse to testify that they drank a beverage called "Malt Mead" that did intoxicate them. If these witnesses or any of them had testified that they purchased from appellant the "Malt Mead" that intoxicated them, at or near the time the accused sold the liquor to the prosecuting witness, or if either of them had testified that he personally knew of the sales of this beverage by the accused to other persons at or near said time that intoxicated the purchaser or person who drank it, this evidence would have been competent and sufficient to take the case to the jury and sustain a conviction if one was had. Or, if the Commonwealth had shown that the beverage known as "Malt Mead" was manufactured or pre-

pared according to a prescribed formula, and that it would intoxicate if drunk in practicable quantities, this evidence would likewise be competent and sufficient to sustain a conviction, although the witness might not be able to state that the "Malt Mead" he testified concerning had been purchased from the accused. These rules of evidence would of course not obtain in prosecutions in which it was necessary to prove the evil intent of the accused, but in prosecutions for a violation of the anti-liquor laws, no question of good faith, or good or bad intent, is involved. It is the act alone that the law looks at, and takes notice of, and by the act the guilt or innocence of the accused is to be judged. If the liquor or beverage is one that will intoxicate, it is wholly immaterial that the accused believed that it would not, or that in good faith he bought it as a non-intoxicant, or that he was ignorant of its quality or ingredients. Alcohol, in some form or other, is the intoxicating property in every drink or beverage; and so the dealer that sells a beverage that contains alcohol in any quantity, takes the risk of its being an intoxicant. But the quantity or per cent of alcohol that a liquor contains is not the test of its intoxicating effect or the only measure by which to judge the legality or illegality of its sale. Some persons might drink a beverage that contained a large per cent of alcohol and not become intoxicated, while others might become intoxicated by drinking a beverage that contained only a small per cent. It is therefore not material to maintain the prosecution to show what per cent of alcohol the beverage contains, although it would be permissible as a circumstance tending to show the intoxicating effect of a liquor to prove the per cent of alcohol it contains.

Interesting opinions and discussions of the question we have considered, and that as a rule support the conclusions we have reached, may be found in Black on Intoxicating Liquors, sections 17, 423; 23 Cyc. page 43; 17 Am. & Eng. Ency. of Law, page 190: Commonwealth v. Eyler, 217 Pa. St., 512; 10 Am. & Eng. Annotated Cases, 786; Haynes v. State, 118 Tenn. 709, 12 Am. & Eng. Annotated Cases, 470; North Carolina v. Powell, 53 S. E. 515, 6 L. R. A. new series, 477; Potts v. State, 97 S. W. 477, 7 L. R. A., new series, 194; State v. Carmody, 91 Pacific Rep. 446, 12 L. R. A., new series, 828; Luther v. State, 120 N. W. 125, 20 L. R. A., new series 1146; Bacot

v. State, 48 Southern Rep. 228, 21 L. R. A., new series 524.

Wherefore the judgment of the lower court is reversed, with directions for a new trial in conformity with this opinion.