## CIHAK v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit.   March 21, 1916.)

### No. 4503.

INTOXICATING LIQUORS ⬳231—PROSECUTION FOR ILLEGAL SALE—EVIDENCE.
   On the trial of a defendant charged with selling intoxicating liquor within a prohibited territory, the article sold being a liquid put up in labeled bottles, which defendant received packed in barrels, purporting on the labels to be nonintoxicating, and not shown to be a distilled, malt, or vinous liquor, where the prosecution introduced witnesses who testified that the contents of some of the bottles drank by them had an intoxicating effect, defendant was entitled to show by other witnesses that the contents of other bottles similarly labeled and from the same barrel, which they drank, had no such effect upon them; the weight of such evidence being for the jury.

   [Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 291; Dec. Dig. ⬳231.]

In Error to the District Court of the United States for the District of South Dakota; James D. Elliott, Judge.

Criminal prosecution of Frank Cihak.   Judgment of conviction, and defendant brings error.   Reversed.

Edward E. Wagner, of Sioux Falls, S. D. (John E. Tipton, of Geddes, S. D., and Robert J. Gamble and George J. Danforth, both of Sioux Falls, S. D., on the brief), for plaintiff in error.

E. W. Fiske, Asst. U. S. Atty., of Sioux Falls, S. D. (Robert P. Stewart, U. S. Atty., and George Philip, Asst. U. S. Atty., both of Sioux Falls, S. D., on the brief), for the United States.

Before HOOK and SMITH, Circuit Judges, and REED, District Judge.

SMITH, Circuit Judge.   By an agreement dated December 31, 1892, and ratified by Congress on August 15, 1894, the Yankton Tribe of Dakota or Sioux Indians ceded a portion of their reservation to the government of the United States.   The record of this transaction will be found in "An act making appropriations for current and contingent expenses of the Indian Department and fulfilling treaty stipulations with various Indian tribes for the fiscal year ending June thirtieth, eighteen hundred and ninety-five, and for other purposes."   28 Stat. 286.   By article 17 of this agreement it is provided:

"No intoxicating liquors nor other intoxicants shall ever be sold or given away upon any of the lands by this agreement ceded and sold to the United States, nor upon any other lands within or comprising the reservations of the Yankton Sioux or Dakota Indians as described in the treaty between the said Indians and the United States, dated April 19th, 1858, and as afterwards surveyed and set off to the said Indians.   The penalty for the violation of this provision shall be such as Congress may prescribe in the act ratifying this agreement."   28 Stat. 318.

The act of Congress ratifying this agreement provided:

"That every person who shall sell or give away any intoxicating liquors or other intoxicants upon any of the lands by said agreement ceded, or upon

any of the lands included in the Yankton Sioux Indian reservation as created by the treaty of April nineteenth, eighteen hundred and fifty-eight, shall be punishable by imprisonment for not more than two years and by a fine of not more than three hundred dollars." 28 Stat. 319.

The plaintiff in error, hereafter called the defendant, was indicted, tried, convicted, and sentenced for selling intoxicating liquors upon the portion of this reservation ceded to the United States. The indictment in the first count charged sales to Arthur Stone and in the second count charged sales to Rufus Picotte. The evidence of the government showed that Arthur Stone and Rufus Picotte each bought of the defendant five bottles of a drink called Clearo. They each drank three of the bottles and turned two of them over to the authorities. One of these thus turned over was examined by Professor F. V. Rayl. He testified that he took a course in chemistry in Wabash College and was a teacher in the same branch in the high school, that he could make an analysis of liquids and determine the percentage of alcohol contained therein, and that one of the bottles of Clearo bought by either Stone or Picotte and turned over to the government had been analyzed by him and that it contained 2.23 per cent. of alcohol.

We entertain no doubt that Professor Rayl was a competent witness on this subject, but it is not for us to say that his testimony was conclusive on the defendant. The four bottles turned over to the government were produced and marked Exhibits A, B, C, and D. Each had a label upon which was printed:

"Guaranteed by Clearo Mfg. & Bottling Works under the Food and Drugs Act, June 30th, 1906.

"Sold in Temperance Communities.

"Clearo.

"[Trade-Mark]

"This is a Healthful, Refreshing, Invigorating and Satisfying Beer, made especially for use as a Temperance Beverage.

"Clearo Manufacturing and Bottling Works, Distributors.

"Be sure to keep this Bottle in a Cold Place. Chicago, Illinois."

The government called Arthur Stone, who testified:

"I drank some of it; it was beer. I drank three of the bottles that I purchased, and it had an effect upon me. I felt kind of funny, and I know the funny feeling was the result of drinking the stuff I purchased from Cihak; it made me pretty near drunk."

And on cross-examination:

"The liquor I purchased from Mr. Cihak there was called Clearo. I bought five bottles in all, and I drank three and turned over two to Mr. Obershaw. I did not drink those bottles right one after the other. I drank one, and in a little while after I drank another one, and then in a little while I drank another one. Then I purchased two and left the pool hall. As a result of drinking this Clearo I felt different to what I ordinarily did. I began to feel funny after I drank the second one. I drank those three bottles about 15 or 20 minutes apart, and within about three-quarters of an hour, then I felt funny. I told Picotte and Obershaw about feeling funny. They told me I had better quit drinking it. I got thick-tongued, so I couldn't talk good. I didn't get drunk; I just felt good."

The government then called Rufus Picotte, who testified that he bought some of the liquor from the defendant:

"I drank three, and know the taste of beer and alcohol. These three bottles which I drank gave me a funny feeling; it had the same effect that alcohol and beer usually have upon me when I drank it. I turned the other two bottles over to Mr. Obershaw; they were similar to exhibits A, B, C, and D."

And on cross-examination he testified that:

"I discovered that the drink had some effect on me when I drank the last bottle."

The defendant called Mr. Wellington Palmitier, who testified:

"On the 4th day of February, 1914, I was acquainted with and had drunk this liquor called Clearo. Q. How long had you been acquainted with that drink at that time? (Objected to unless the questions are confined to the Exhibits A, B, C, and D; no proper foundation laid.)

"The Court: Sustained. (Defendant excepted.)

"At the time I bought and drank this liquid called Clearo at the defendant's place in February, it was contained in bottles, the labels resembling those that are offered here in evidence. Q. Are you acquainted with and have you drank that kind of liquor that was purchased there out of similar bottles and bearing the same label, in all appearances the same as the liquid offered in evidence? (Objected to on the ground that no proper foundation has been laid, and the question does not call for an answer relating to the exhibits offered in evidence.)

"The Court. Do you expect to follow this up, and show by competent proof that these bottles were filled with the same kind of liquid he drank?

"Mr. Tipton: Counsel states to the court that in view of the fact that it was brought out in the evidence of the government that persons were seen there in a seemingly intoxicated condition—were seen at this defendant's pool hall drinking this kind of liquid and in a seemingly intoxicated condition —that this evidence is offered in rebuttal of that.

"The Court: The objection is sustained. (Defendant excepted.)

"Mr. Tipton: Counsel will state to the court that he now offers to prove by this witness on the stand, and by other competent witnesses, and desires to recall the defendant to show, that this liquid called Clearo is a common soft drink, ordinarily sold on the reservation, and that has been sold at this particular place since the year 1910 in bottles of this same kind, and that so far as may be known the circumstances indicate that it is the same kind of liquid as was sold to the witnesses Arthur Stone and Mr. Picotte, and offers to show that the liquid is not an intoxicating liquor and does not produce that effect.

"Mr. Fiske: Plaintiff objects to the offer. on the ground that no proper foundation has been laid for the introduction of the same, and on the further ground that any testimony relating to the contents of any liquid or liquor,not contained in the Exhibits A, B, C, and D is irrelevant, incompetent, and immaterial.

"The Court: Sustained. The court is of the opinion that whether or not the liquor is intoxicating cannot be proven by showing what effect other liquors may have had, whether in the same kind of bottles or not. There is no assurance here that the liquors that were drank were of the same character as the liquors sold to these witnesses; no assurance that because a bottle is labeled Clearo that it contains Clearo. There is only one way of proving; that is, by proving the effect of it, or by an analysis. (To all of which the defendant excepted.)"

The defendant, Frank Cihak, was then recalled for further direct examination, and testified as follows:

"I bought this liquid called Clearo from the fellow where I bought the pool hall; it was in barrels; these bottles were so many each in barrels; a barrel contained 120 bottles. Q. And do you know if this liquid called

Clearo that is here is the same kind of liquid or liquor that you have been selling there right along to other people; does it come from the same barrels and bottles, the same description, bought at the same place?

"Mr. Fiske: Objected to, no proper foundation laid, the witness not having shown himself competent to testify, and on the further ground that it is immaterial.

"The Court: Sustained. (Defendant excepted.)

"Q. Mr. Cihak, have you sold to Mr. Palmitier, Mr. Janda, Mr. Hormstra, and Mr. Bousa this same kind of liquor that you sold to Arthur Stone, and have you sold to them that since December, 1914?

"Mr. Fiske: Objected to, as calling for the conclusion of the witness, and for the further reason that it is not material, unless it is shown by competent testimony that the bottles sold contained the same liquid of the same amount of alcohol as the exhibits in evidence.

"The Court: Sustained. (Defendant excepted.)

"Mr. Tipton: The defendant now at this time offers to prove by the defendant that he has sold the same kind and quantity of liquor contained in the bottles that are offered in evidence and that were sold to witnesses Stone and Picotte to the persons mentioned in his offer heretofore made, and to prove by those witnesses that they have drank this liquid in ordinary quantities and that the liquor does not produce any effects of intoxication.

"Mr. Fiske: To which offer plaintiff objects, unless the showing is made by competent testimony proving that the liquor contained in Exhibits A, B, C, and D, in evidence, is the same liquor, or the same contents, as sold to the witnesses.

"The Court: Sustained; it is immaterial. (Defendant excepted.)"

There is nothing in the record to show that the liquors in question were malt or fermented liquors. Under such circumstances it is usually requisite to show whether or not the liquors were intoxicating. In Bell v. State, 91 Ga. 227, 18 S. E. 288, it was held a conviction could not be sustained for the sale of rice beer, without proof that rice beer was intoxicating. The same was in effect held in Connolly v. Atlanta, 79 Ga. 664, 4 S. E. 263, in reference to the sale of New Era beer, and in Com. v. Gavin, 160 Mass. 523, 36 N. E. 484, and Com. v. O'Keane, 152 Mass. 584, 26 N. E. 97, in reference to hop beer, and in Com. v. Blos, 116 Mass. 56, with reference to Schenck beer, and in Marks v. State, 159 Ala. 71, 48 South. 864, 133 Am. St. Rep. 20, in reference to mead or metheglin, and in Klare v. State, 43 Ind. 483, in reference to common brewer's beer, and in Gourley v. Com., 140 Ky. 221, 131 S. W. 34, 48 L. R. A. (N. S.) 315, with reference to malt mead.

We do not understand the court below held that evidence was not admissible as to the intoxicating effect of liquors other than distilled, malt, or vinous liquors, the character of which is so well known that the courts take judicial notice of it; but the court seemed to think that the identification of the liquors here sold and the liquor sold to the other witnesses was not sufficient. We can but think the court erred in its ruling on this subject. The liquors were acquired in bottles in barrels and were similarly marked, and we think that, in the absence of evidence to the contrary, they should have been assumed to be of the same character as those sold to Stone and Picotte. The government had been allowed to offer evidence of the effect of the liquor sold to Stone and Picotte upon the parties who consumed it, and the like evidence should have been admitted for the defendant; but we would not be understood as holding that it is admissible solely because

the government had offered the same class of evidence. We think it was admissible by the defense for whatever it was worth, even though the government had offered no evidence of this particular class. We realize that liquors may be intoxicating within the meaning of the law, and yet, taken in ordinary quantities, have substantially no effect upon a given witness, by reason of his long use of intoxicating liquors; but that only tends to affect the weight of the evidence, not its admissibility.

We cannot agree with the District Court that when liquors are shipped in bottles in barrels, and are all labeled alike, and there is no evidence but that they are of the same character, and evidence is offered that some of the bottles contained liquor which was intoxicating, it is not admissible to show the effect of other of the same class of liquors upon others, although, of course, the jury must determine in each case whether the liquors were in fact the same or not.

There are many other questions presented; but they may not again arise, and we will not consider them.

The case is reversed and remanded, with directions to the trial court to set aside the verdict and grant a new trial.