### H. G. PATTON v. THE STATE.

No. 10061.    Delivered April 14, 1926.

**1.—Rape—Evidence—Hearsay—Improperly Received.**

Where, on a trial for rape, predicated upon a mock marriage, the state was permitted to prove by the prosecutrix the contents of a letter which she testified was entirely typewritten, which said appellant denied writing, there being no proof of any kind that the letter was written or signed by him, in which prosecutrix testified that he confessed his guilt of procuring the mock marriage, the admission of this hearsay evidence

necessitates a reversal of the case. Following Templeton v. State, 57 S. W. 831, and other cases cited.

**2.—Same—Evidence—Held Insufficient.**

Where, on a trial for rape, predicated upon a mock marriage, the state relied for a conviction alone upon the testimony as to the mock marriage of prosecutrix, with no corroboration, and the failure of the state to produce any witness to such marriage, we do not believe that, in the light of all the facts in this record, a conviction should be permitted to stand.

Appeal from the District Court of Taylor County. Tried below before the Hon. W. R. Ely, Judge.

Appeal from a conviction for rape, penalty fifty years in the penitentiary.

The opinion states the case.

*W. J. Cunningham* of Abilene, *Nat Patton* of Crockett, and *W. B. Lewis* of Dallas for appellant.

*Sam D. Stinson*, State's Attorney, and *Robert M. Lyles*, Assistant State's Attorney, for the State.

BERRY, JUDGE.—The offense is rape, and the punishment is fifty years in the penitentiary.

The indictment charges that the offense was committed by fraud and by the use of a stratagem and a sham and pretended marriage by which the said woman was then and there induced to believe that the appellant was her husband.

The prosecutrix was nineteen years of age and the divorced wife of one Isbell at the time of her alleged pretended marriage to the appellant. The appellant was a married man about twenty-nine years of age, having a wife and one child. Prosecutrix testified that she met the appellant in April and believing that he was a single man kept company with him regularly from that time until the date of their marriage which was on the 22nd day of the following May. She testified that marriage license was issued for them by the County Clerk at Baird, Texas, on the 22nd day of May, 1925, and that they returned to Abilene that evening, had dinner at a hotel at that city and thereafter drove away from Abilene to a town which appellant told her was called Bradshaw and that they were then married by a person whom appellant said was a Methodist preacher by the name of Marshall, who was pastor at the time at Cameron, Texas. She testified that they went to a house in the town which was supposed to be Bradshaw and there

found the party who performed the ceremony and another man and woman. The alleged minister and the other witnesses to the wedding were all strangers to her.

There is no suggestion of any corroboration as to the marriage ceremony from any witness thereto. Marshall, the pastor of the Methodist Church at Cameron, testified that he did not perform the ceremony and the record fails to disclose any effort on the part of the state to call either the man or woman who was supposed to have witnessed the ceremony.

Prosecutrix further testified that after the ceremony they came back to Abilene and she went to her home and the appellant went to the hotel and that about two days thereafter she went to appellant's room at the hotel in Abilene and had intercourse with him, believing at the time that she was his wife.

The undisputed testimony shows that appellant lived in the town of Abilene from about the 1st of November, 1924 until about the 1st of May, 1925, with his wife and child. That a great portion of this time they boarded at the Blue Bird Inn, a well known boarding house in the city. The record is undisputed to the effect that appellant and his wife and child frequented the streets of Abilene, driving thereabout in their automobile and that they attended picture shows and other places of amusement and that his wife attended bridge parties and that both he and his wife joined St. Paul's Methodist Church during the time they lived in Abilene and were publicly received into said church at said time in the presence of a large congregation of people.

Prosecutrix testified that she was a member of the Methodist Church although she did not belong to the congregation that worshiped at St. Paul's Church, but that she did belong to another Methodist Church in the city of Abilene and was a regular attendant at the services there.

It is appellant's contention and he testified that no marriage ceremony was performed. We think the only question of fact contained in this record is as to prosecutrix's knowledge of the fact that appellant was married at the time the alleged ceremony was performed for them if it was performed. On this issue, we express our serious doubts. Prosecutrix herself testified that prior to the alleged marriage she talked with a Mr. Howard at Hamlin and says:

"Mr. Howard and I talked about Mr. Patton's wife. That was three or four days before we were married."

Appellant offered in evidence a letter received by him from

prosecutrix which she admitted was written on Friday following the day they were married.   This letter was as follows:

"Abilene, Texas.   Friday Morn.

"Dearest Pat:

"This letter is going to be a difficult one for me to write, because it is to be the last one I will write to you ever.

"I hardly know how to begin unless it is by saying that after a lot of sober thinking I have decided that we can't go on. That's all there is to it.   We just simply can't!

"Please don't think I am doing this because I don't love you; 'twould be absurd.   I think you know that I do love you with all my heart.   But, ever so, I want you to go back to Ruth.

"How terribly selfish it was of me to think we could be happy together!    There would always be that shadow between us and happiness.    This conviction came to me Wednesday afternoon at the hotel, while we were eating lunch.   Surely you must have realized why I let our love rule supreme for a time.   You must know I knew then that we couldn't go on as we planned.   And with that strong conviction and the knowledge that Pat loved me I wanted him to have 'His Hour.'

"I don't think anything could make me regret it for a minute. Nothing could make me sorry for what happened, and no price could be too much for me to pay for the wonder of the beautiful thrill of belonging entirely, even for so brief a time, to the man I love.

"If it so happens that I am requested by old Maw Nature to pay for it I won't make any kick on the price, nary a kick!

"Pat, the messenger just that moment brought me your wire. I had intended to let Dorothy take this by and leave it at the Grace on her way to Chaney's.   But I see by this wire you will not be there.   'Fer' from it.

"Oh, Darling, I do hope the baby is not worse, that you're only taking him, that he may go on improving faster there than in Dallas.

"I mean what I say about your going back to Ruth.

"* * * *   I may be fickle and frivolous enough to forget soon.   But, if I don't forget I'll know — remembering that her need of you certainly is much greater than mine — that the other name for Love is Giving.

Elinor."

The lawful wife of the appellant was named Ruth and there is much testimony in the record by various parties to the effect that prosecutrix had been told that the appellant was a married

man. The wife of the appellant testified that she told prose-cutrix prior to the time of their supposed marriage that the appellant was married to her and asked prosecutrix to leave him alone. Prosecutrix denied this conversation but there seems to be no dispute as to the fact that Mrs. Patton did talk to someone at prosecutrix's home concerning this matter.

With the record in the condition above stated, appellant shows by his bill of exceptions No. 2 that while the state was offering its evidence in chief prosecutrix testified that on July 4, 1925, while she was in Dallas, Texas, she received a typewritten letter to which the defendant's name was signed with a typewriter and that she showed said letter to the defend-ant and that he destroyed it. Her testimony further shows that there were no marks of any kind or description about said letter that would identify it as having been written by the defendant and her testimony further shows that when she showed it to the defendant he denied writing it, and she further testified to nothing showing that appellant wrote this letter. In this condition of the record, the State was permitted to prove by the prosecutrix the contents of said letter which were as follows:

" 'Dear Edna:

" 'I have been thinking it over and have decided to tell you the truth. We are not legally married,' and it went ahead to tell me if I got in a family way, to get rid of it; that it was just plain adultery to live together; if there was anything wrong with me just to get rid of it; that for me to try and find a job in Dallas, and if I could not find one, then he would send me money every week until I did. He told me to keep straight; that he didn't want, just because he had deceived me and had done me wrong, was no sign that I should throw myself away, and he says 'don't go home, under any circumstances.' "

Appellant made various objections to the introduction of this letter among which was one to the effect that it had not been identified as having been written by the appellant and that it was prejudicial and amounted to the introduction of hearsay testimony on the most important issue in controversy in the case. We think it clear from the bill that every pertinent ob-jection that could have been raised to the introduction of this letter was made in due time by the appellant. His objections were overruled and the prosecutrix was permitted to testify as above stated to the contents thereof. This action of the court was error, and error of such serious consequence as to require

a reversal of the case.   The contents of the typewritten letter were entirely sufficient, if believed by the jury, and if the jury believed he wrote it, to counteract and bring to naught the entire defensive theory offered by the appellant.   The testimony was not admissible under many authorities that might be cited. The case of Templeton v. State, 57 S. W. 831, seems directly in point. From that case we quote:

"The receipt would stand in the same attitude as the letter and the mere reception of a letter or receipt through the mail without some knowledge of the source from which it came or the authority from which it came would not authorize its introduction in evidence, either in a criminal or a civil action.

See also Johnson v. State, 27 Texas Crm. App. 175; 11 S. W. 106.   Taylor v. State, 50 Texas Crim. Rep. 383; 97 S. W. 477. Denning v. State, 50 Texas Crim. Rep. 631; 100 S. W. 401. Miller v. State, 144 S. W. 240.

Believing that the court was in error in admitting the contents of a letter above discussed and being in grave doubt as to the sufficiency of the evidence to show that prosecutrix did not know that appellant was a married man at the time she had the alleged act of intercourse with him, it is our opinion that the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.