# Vanmeter v. Commonwealth.

(Decided January 17, 1930.)

JOHN A. LOGAN and V. R. LOGAN for appellant.

J. W. CAMMACK, Attorney General, (DOUGLAS C. VEST, of Counsel), for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS—Reversing.

The appellant and defendant in the indictment, Paulie Vanmeter, was convicted in the Edmonson circuit court of the offense ''of unlawfully having spirituous, vinous malt and intoxicating liquor in his possession . . . to wit, home brew, same being then and there spirituous, vinous malt and intoxicating,'' etc. He has filed a transcript of the record in this court with a motion for an appeal and in brief of his counsel there is but one complaint made of the verdict and judgment, which is: That there was no evidence introduced at the

trial to prove, nor any fact or circumstance from which the jury might infer, that the beverage possessed by defendant was intoxicating, and because of which the court erred in overruling his motion for a peremptory instruction.

The discovery of the alleged unlawful beverage was procured through a search warrant issued by the county judge of Edmonson county and executed by W. W. Duvall, a constable of the county, assisted by Willis Vincent. The constable and his assistant testified that in executing the search warrant they found in defendant's residence 26 bottles of "home brew," and that one of the bottles was opened, and the liquid therein effervesced, and some of it escaped through the mouth of the bottle. They neither tasted nor smelled of the liquid, nor did they testify to any fact from which it might be inferred that the contents of the home brew, so discovered, contained any alcohol whatever. The remaining 25 bottles were taken by the searchers and later delivered to the county judge, who testified in the case with reference to the issuing of the search warrant by him, but he made no statement concerning, nor was he asked about, the contents of any of those 25 bottles. So that the only testimony introduced by the commonwealth was that defendant was discovered to be the possessor of 26 bottles of a liquid substance that effervesced when it was opened and exposed to the air, and from that testimony *alone* the jury was permitted to speculate as to whether or not it was intoxicating.

On the other hand, defendant and three or four witnesses testified that only about 20 or 30 minutes prior to the search each of them had consumed about four bottles of the same substance as was contained in the 26 found by the searchers, and that it possessed no intoxicating quality whatever. No testimony was introduced to contradict that given by defendant and his witnesses, and none concerning any alcoholic odor or taste was given or offered. The statute forbids the unlawful possession of *intoxicating* liquor, and that it should be so is the very gravamen of the offense, since the possession of a nonintoxicating beverage is not prohibited.

In a number of cases we have held that the words "whisky," "brandy," and other terms commonly used as descriptive of alcoholic beverages would necessarily imply that the beverage was intoxicating; in other words,

that the court would take judicial knowledge of the fact that such named beverages were intoxicating and came within the inhibition of the statute with reference thereto. But no such consequences follow with reference to other beverages, by whatsoever name called, unless, perhaps, the designated name had become so universally applied to an intoxicating drink as to have a fixed and permanent application to it as an intoxicating beverage. It is a well-known fact that a number of beverages made in the home, as well as some purchased in the market, are nonintoxicating, although they possess effervescing qualities, an illustration of which is ginger ale, which is used and consumed by many people as a wholesome nonintoxicating drink. And so, in the case of Gourley v. Commonwealth, 140 Ky. 221, 131 S. W. 34, 35, 48 L. R. A. (N. S.) 315, it was held that a drink called "Malt Mead" did not impart from its name alone that it was intoxicating, although it was conceded that it might come "within the general definition of a malt liquor;" and because there was no evidence to show that the liquid there involved was intoxicating, the judgment of conviction was reversed, the court inter alia saying: "It is therefore necessary when the evidence for the commonwealth does not show that the beverage sold was either spirituous or vinous liquor or the malt liquor commonly known as beer or ale that it should be proven that it was an intoxicating beverage or a beverage that would intoxicate."

In the case of Deer v. Commonwealth, 195 Ky. 761, 243 S. W. 1028, the indictment charged defendant with selling "malted intoxicating liquor, a concoction known as 'home brew.' " He was convicted, and the judgment was reversed because there was no evidence to show that the beverage was intoxicating. After referring to the Gourley case, supra, in which it was held that "Malt Mead" did not import intoxicating qualities and required evidence to prove it, the opinion said: "The same conclusion is inevitable with reference to the 'home brew' involved here, since, while the evidence shows it contained malt, but not in what quantity, both the indictment and the evidence show it was not common beer, since the former describes it as a 'malted intoxicating liquor, a concoction known as "home brew," ' and the latter shows it was made by the defendant at his home by boiling hops, malt, and isinglass in 10 gallons of water for about 45 minutes." From that excerpt it will appear

that the commonwealth did attempt in that case to prove facts from which the intoxicating quality of the beverage could be inferred, and which made it a stronger one to sustain the conviction than the record presents in this case where there was a total absence of such evidence. Supporting the conclusions reached in the two cases referred to are this court's opinions in the cases of Middleton v. Commonwealth, 226 Ky. 220, 10 S. W. (2d) 812, and Risner v. Commonwealth, 229 Ky. 486, 17 S. W. (2d) 401.

But it is insisted that the affidavit made for the purpose of procuring the search warrant stated that defendant possessed intoxicating liquor, and which affidavit was introduced at the trial over the objections and exceptions of defendant. It requires no argument to show that the affidavit made to procure the search warrant was and is wholly incompetent to prove the guilt of the defendant on his trial of an indictment procured upon the evidence found by the officers who executed the warrant. The affidavit in this case was relevant only for the purpose of establishing the validity of the search warrant, a preliminary question to the admission of the discoveries of the officers who executed it. On the issue of any fact to establish defendant's guilt, it was and is the rankest hearsay, and violates defendant's constitutional right to be confronted face to face with the witnesses against him, and the court erred in admitting the affidavit as evidence to prove defendant's guilt on the trial of the indictment against him.

There being no evidence to prove that the beverage possessed by defendant was in any way intoxicating, the court should have sustained his motion for a peremptory instruction to acquit him.

Wherefore the motion for the appeal is sustained, the appeal is granted, and the judgment is reversed, with directions to set it aside and for proceedings consistent with this opinion.